LUTHER STONE

*v.*

JAMES C. FARGO *et al.*

1.  SALE UNDER TRUST DEED—*notice to the debtor—bad faith—inadequacy of price.* A party holding certain real estate under a contract of purchase, sold the same, receiving from his vendee a part of the purchase price in cash, and for the residue his promissory notes, which were transferred before their maturity. Subsequently, this vendor forfeited his contract of purchase, and thereupon his vendee purchased from the original vendor, receiving a deed for the premises, and executing a deed of trust thereon to secure a portion of the purchase money, and at the same time receiving from his grantor a bond to indemnify him against his outstanding notes given on his former purchase. It was also agreed that steps should be taken, at the expense of the grantee in the trust deed, to restrain the collection of those outstanding notes, and to recover the money paid on the first purchase, which was to inure to the benefit of the vendor on the second sale. The trustee in the trust deed also agreed, as the agent of the holder, that the residue of purchase money secured thereby should not be demanded until the suit in respect to those notes should be determined, yet, pending that suit, and without any notice to the grantor in the deed of trust, the trustee sold the property, at a grossly inadequate price, the circumstances tending to show it was not a fair and real transaction with any of the parties to it; there was no money paid, or deed made to the purchaser, for a period of two months after the sale. It was *held*, the trustee's sale should be set aside, on bill filed for that purpose, in order to a more equitable adjustment of the rights of the parties.

2.  SET OFF—*in equity—against a debt due to an estate.* A purchaser of land gave his notes for a portion of the purchase money, and simultaneously therewith, as a part of the same transaction, the grantor executed to the purchaser a bond to indemnify and save him harmless as against

certain outstanding notes given by him upon a prior purchase of the same premises from a third party who had bought from the same grantor, but had forfeited his contract. After the death of the grantor, the party thus sought to be indemnified was compelled to pay those outstanding notes: *Held*, that in equity, the party so damnified could set off the sum paid by him, against his notes due to the estate of his grantor, it appearing the estate was solvent and the interests of other creditors would not be affected thereby.

3. Nor would the fact that the debt arising from a breach of the condition of the bond of indemnity did not accrue and become fixed in the life time of the party executing it, at all affect the right of set off in such case against his estate.

4. And the claim arising out of a breach of the condition of the bond of indemnity, should go in discharge of the notes given for the purchase money of the land, without reference to the claims of other creditors of the estate, inasmuch as that indemnity appeared to be one of the terms of purchase, and all being parts of the same transaction.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. DENT & BLACK, for the appellant.

Mr. J. S. PAGE, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This was a suit in chancery, commenced by Luther Stone, to set aside a sale made by Edward A. Rucker to James C. Fargo, under a trust deed, and to set off against the note of Stone a larger claim, growing out of a bond of indemnity, executed to Stone by Caroline Clarke, deceased at the time of filing the bill.

Appellant purchased of Mrs. Clarke, in her life time, certain property in Chicago, through her agent and attorney, Rucker, and paid her in cash $847.50, and executed to her his two notes —one for $455, due May 1, 1858, and one for $1233, payable

May 1, 1859. These notes were dated December 16, 1857. Prior to this sale, appellant had bought the same property of Charles G. E. Prussing, and had paid him a large sum on account of purchase money, and executed to him notes, amounting, in the aggregate, to $2536.04. Prussing forfeited his contract with Mrs. Clarke, and hence the sale to appellant. Appellant's notes to Prussing had been transferred before maturity; and on the day of appellant's purchase from Mrs. Clarke, she conveyed to him the premises, took a trust deed to secure the deferred payments, and, at the same time, executed and delivered to him an indemnity bond, in the penalty of $5000, conditioned that if she should, at all times thereafter, save, defend and keep him harmless and indemnified of and from all actions, suits, costs, charges, damages and expenses, which should or might thereafter happen to him by reason of two promissory notes which he had given to Prussing, and which were then outstanding, then the obligation to be void, otherwise to remain in full force.

It was furthermore agreed between the parties, that a suit should be prosecuted, at the expense of Caroline Clarke, to perpetually restrain the collection of the notes and to recover certain moneys which Stone had paid to Prussing, the benefit of which should inure to Mrs. Clarke, and for this purpose a a power of attorney was executed by Stone to Messrs. Marsh & King.

In pursuance of such authority, a suit was commenced in the life time of Mrs. Clarke, and during its pendency, she having died, appellees, except Fargo and Rucker, were duly appointed administrators of her estate.

Rucker was trustee in the trust deed, and, as the agent and attorney of Mrs. Clarke, agreed with Stone that the payment of the note for $1233 should not be demanded until the determination of the suit against Prussing. The sale by Rucker to Fargo was on the seventeenth of January, 1862, and the final decree in the suit against Prussing was not rendered until June 28, 1862. The property was worth, at the time of sale, $5000

or $6000, and was sold for $1500. The last note only was then unpaid.

The parties all resided in Chicago, and had frequent interviews in regard to the suit pending and the note in controversy. It seems that Fargo was not present at the sale; that the trustee had no communication with him in regard to it; that one Timothy S. Fitch purchased for him, and that all these parties, including the administrators, were upon intimate terms with each other, and managed to conceal the transaction from appellant. Though the pretended sale was in January, 1862, no money had been paid or deed executed in March following, when the injunction was served.

After the death of Mrs. Clarke, appellant was compelled to pay over $2000 in consequence of a non-compliance with the conditions of the bond of indemnity.

Two questions are presented by this evidence. Was the trustee's sale wrongful and fraudulent? Is appellant entitled to set off against his unpaid note, the amount he has paid on account of the non-fulfillment of the requirements of the bond?

The circuit court found that the sale was wrongful, but, as a condition precedent to setting it aside, required the payment of the note. Under the circumstances, it was bad faith to make the sale without actual notice to appellant. He had the right to rely upon the agreement. The obligation was to save him harmless. This had not been kept, and this attempted forced sale was in violation of the spirit of the bond, and the express terms of the agreement. It was virtually a fraud; was for a grossly inadequate price, and does not appear to have been a fair and real transaction. It was destitute of good faith—the soul of contracts, and the essence of all honest engagements.

The claim of appellant for $2584.08 against Clarke's estate, had been allowed by the county court, and as it was not presented for more than two years from the date of letters of administration, it was ordered to be paid out of assets which

might be discovered and inventoried, after the lapse of two years from the granting of letters. There has been no newly discovered property. It appears there was sufficient money in the hands of the administrators to pay all claims allowed, except the claim of appellant, and an order had been entered for such payment.

Hence, to allow the set off in this case would not change the course of distribution, and could not prejudice other creditors. They have been paid, or there is a sufficiency of assets to pay them. The estate is not insolvent, and therefore the allowance of the set off would not violate the statute which requires the assets of an insolvent estate to be distributed *pro rata* among the creditors.

The case of *Newhall* v. *Turney*, 14 Ill. 338, cited by appellees, is not in point. In that case, the suit was brought on a note given to the administrator, and the plea of set off was, that the deceased, in his life time, was indebted to defendant. The court, in the opinion, properly said : " The law is well settled, that, in an action to recover a demand accruing to an administrator after the death of an intestate, the defendant can not set off a debt due from the intestate in his life time. To allow this to be done would interfere with the proper order of distribution. It would enable the debtor of an insolvent estate to obtain an unjust advantage." To the same effect is the case of *Crews* v. *Williams*, 2 Bibb, 262, and others referred to by appellees.

The case at bar is entirely different. The note was given to Mrs. Clarke, and the bond was executed by her in her life time. The execution and exchange of these writings were simultaneous. There is mutuality in the debts. The claim of appellant has been ascertained, and is certain and determinate. No unjust advantage would be obtained by appellant, in granting the prayer of the bill. No creditor would be deprived of his debt.

But it is insisted that, as appellant was not compelled, in the life time of Mrs. Clarke, to pay the notes given to Prussing,

there was no claim against her at her death, and, therefore, the demand of appellant, accruing subsequently to the death, can not be set off to the note. The liability was upon her, her heirs and personal representatives. Whenever the conditions of the bond were broken, the liability attached, and the debt became fixed. If this happened before the collection of the note, there is no reason why the set off should not be allowed, if the rights of other creditors were not infringed upon. The attempted distinction is exceedingly nice, and unjust in principle.

We think the giving of the bond was one of the terms of purchase. It and the note were parts of the same transaction. The claim arising out of the liability upon the bond should be applied in discharge of the note, without reference to the claims of other creditors. It is a plain equity, which should not be defeated by the technical rules applicable to a set off at law.

The decree of the circuit court is reversed and cause remanded, with directions to enter a decree setting aside the sale and allowing the set off.

*Decree reversed.*