UZIAH MACK

*v.*

GEORGE WOODRUFF.

1.  SET-OFF—*against demand due an estate of deceased person.*  A debtor can not, after the death of his creditor, by the purchase or payment of claims against the estate, acquire a cross-demand that can be set off in full against the debt he owes the estate, to the injury of other creditors of the estate, where the estate proves insolvent.

2.  Where a partner pays a debt as the surety of his copartner in the lifetime of the latter, or takes a note from him before his death, it seems there is no question but that the surviving partner, on settlement with the administrator of the deceased partner, may set off such demand without regard to the solvency of the estate.

3.  But where a surviving partner, after the death of his copartner, pays a debt as surety for the latter, on settlement with the estate, which proves insolvent, he can not set off such claim in full, but may to the extent of his *pro rata* share, taking the same as other creditors who have proved their claims. His being surety gives him no preference over general creditors, and neither does the fact of partnership.

4.  PARTNERSHIP—*right of partner to pay himself what the firm owes him.*  If, on the settlement of firm affairs, one partner is found to be indebted to the other, the latter may retain enough of the partnership assets to cancel the indebtedness, if they are in his hands, and the firm debts are all paid; but if he does not have such means in his hands, and can not procure them, his only remedy is to collect the amount from his partner as a debtor.

5.  SAME—*accounting by surviving partner.*  The remedy given by statute to compel a surviving partner to account in the county court with the administrator of the deceased partner, is to be governed by the same equitable rules and principles as a proceeding in equity, and such surviving partner, on such

settlement, may be allowed, as a set-off, his just share of any demands held by him against the deceased partner without first having procured their allowance.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Mr. GEORGE S. HOUSE, for the appellant.

Mr. F. GOODSPEED, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Uziah Mack and Firman Mack were brothers and partners in business. Firman Mack held one-third, and Uziah two-thirds, of the interest in the firm. Firman died before the expiration of the time limited for the continuance of the partnership, and his individual estate has proved to be insolvent; but the partnership was solvent, and its debts and liabilities seem to have been paid. According to the articles of partnership, on Firman's death, Uziah became the owner of the property of the firm, and proceeded to wind up its affairs.

The administrator of Firman's estate cited Uziah to file an account in the probate court. He did so, and, among other things, reported that he had, after Firman's death, made several payments on two notes given by Firman, in his lifetime, for his individual indebtedness, and for the payment of which Uziah was surety thereon. One of these notes was payable to Mrs. Bronson, and the other to John Curry; and he claimed the right to set off these payments, and to retain a sufficient sum belonging to the estate to pay the balance, but the court disallowed his claim, and ordered him to pay the money to the administrator, and he appealed to the circuit court, where, on a trial there, a similar judgment was rendered, and he appeals to this court.

On the one side, it is contended the account should be stated between the surviving partner and the estate precisely as though

it was between the partners themselves on a dissolution of the copartnership by the efflux of time; and that, on such an accounting, each partner would be allowed all of his claims against the other, whether relating to the business of the firm or growing out of individual transactions.   On the other hand, it is insisted that, by the death of Firman, the partnership being thereby dissolved, the provisions of the Statute of Wills creates a new condition of things, which, in this regard, changes the rights of the parties; that, on the death of a person, whether a partner or not, by that statute, his estate of every kind must pay and discharge his debts as his debts and contracts existed at the time; and a debtor can not, after the death of his creditor, by the purchase or payment of claims against the estate, acquire a cross-demand that can be set off against the debt he owes the estate.

The last proposition is undoubtedly true.   But does appellant occupy that position, or fall within the rule?   Had this money been paid on these notes by appellant in the lifetime of his brother, or had the notes been payable by deceased to appellant, whether due or not, at the time of Firman's decease, we presume there would be no question that he could, on his settlement with the estate, have set off the demands against the claim of the administrator for Firman's balance of the firm assets.   But appellant does not occupy that precise position.   He has paid to creditors of his deceased partner debts since his death occurred, and claims which, had they been filed against his estate, could have only received a *pro rata* share of the assets.   Or, had he paid them in full after his partner's death, and presented and had his claim allowed against the estate, he, under the statute, could only have shared in the assets with other creditors of the same class.   He would, in such a case, have no preference over other creditors.   His being surety for his brother gives him, in the payment of his claim to the administrator, no superior equity or claim over the general creditors of the estate.

Suppose a person, not a partner, had been the surety, and

paid the debt, and in the lifetime of deceased, had recovered a judgment for the amount, could be claimed a superior lien over other general creditors, to have his claim settled in full, whilst their claims were only paid in part? Or, if such a person had been surety, and paid the debt after Firman's death, would that give him any advantage over other creditors? We think not. Then in what consists his superior equity? Does it grow out of his having been a partner of Firman in his life-time? One partner, by reason of that relation, acquires no interest in or lien upon the individual property of his copartner; nor is the interest of his partner in the partnership effects under any lien in his favor for the payment of any individual debt such partner may owe him.

If, on a settlement of the firm affairs, one partner is found to be indebted to the other, the creditor may retain enough of the partnership assets to cancel the indebtedness, if they are in his hands, and this is to avoid litigation and unnecessary costs. But if the creditor partner, on such settlement, does not have means of the firm, and can not procure them, his only remedy is to collect the amount from his partner as a debtor. If a settlement has been had, and a balance struck, then by action at law, otherwise, by a bill for an account. But to this there is the limitation that the firm debts are paid and discharged, otherwise the firm creditors have a superior lien on the firm assets, and neither partner can appropriate them to discharge a debt due him from his copartner.

On the death of Firman, and the grant of letters of administration, the statute imposed a lien, incomplete it may be, on all of his property and credits, in favor of, and for the payment of, all his debts according to the class and in the manner it prescribes. Under the provisions of this statute, the holders of these notes could only share *pro rata* in the funds of the estate in the hands of the administrator. A sale of these claims by them to appellant, or his payment thereof, conferred on him no greater right, nor did the fact that he was

surety on the notes, and we have seen that his being a partner gave him no such advantage.

It has been held that, in a suit brought by an administrator against a debtor to the estate, the latter can not set off a claim for money the debtor has paid as surety of deceased after his death. *Granger* v. *Granger,* 6 Ohio R. (Hammond,) 35. *Walker* v. *McKay,* 2 Met. Ky. R. 294, announces the same principle. Here, there was no liability by the deceased, at the time of his death, to his surviving partner, and there being none, his subsequent payment gave him no right to set off that payment in full.

Under our Statute of Wills, parties' rights are fixed by the death of an intestate. As their rights and liabilities then exist, they must continue. Had appellant paid this money before his brother's death, or if there had been an agreement between the parties that he should pay these claims and retain the amount out of Firman's interest in the funds of the firm, then it may be a set-off might be allowed.

It is urged that the rules of equity are more liberal in allowing set-offs than those of law, and where a plaintiff is insolvent, that a defendant will, in equity, be allowed a set-off which could not be at law. This is no doubt true in many cases, as between the parties themselves, but never where others have an interest in or a claim on the fund offered to be set off. Here, the administrator, as a trustee or representative of the creditors of Firman's estate, has a claim on the share of the funds of the firm to which his intestate was entitled, and he has no legal right to permit them to be set off by appellant, nor can equity so far disregard the claims of the creditors as to apply this portion of the fund to discharge appellant's liability for the payment of these debts. The rights of creditors of the estate are too clear to be disregarded, by allowing this set-off to the full amount.

But as this statutory proceeding in the probate court was designed to give a cheap and speedy mode of stating an account, without compelling the administrator to resort to a

bill in equity, it must have been the purpose of the General Assembly to give it all of the incidents, and to govern it by the same principles as a proceeding in equity. This, then, being true, the account should be stated under equitable rules. And although appellant has no right to set off all he has paid or may be compelled to pay, the question arises whether equity and justice do not require that he be placed upon an equality with the other creditors of the estate, by setting off the same per cent of this claim that he would have received had it been proved and allowed in the probate court.

As a general rule, equality of right is equity. Here, his claim is as just, both legally and equitably, as that of any other creditor of the same class. He has a fund in his hands belonging to the estate, and he has a just claim against the estate, and had it been allowed, he would have received back his *pro rata* share of the assets of the estate. Then why require him to prove his claim against the estate, at the regular time for allowing claims, pay to the administrator this fund, and then draw back from it his *pro rata* share? Why the necessity of all this form, instead of permitting him to retain that *pro rata* share, and pay the balance? To do so, but administers complete justice to all parties in interest, and wrongs no person. Equity usually disregards forms, and does what is equitable and just under recognized rules.

As appellant had this fund in his hands, and as equity gave him a lien on it, for his *pro rata* share of the estate, he was not bound, in equity, to present and have his claim allowed, as were other creditors, but is only required to prove an accounting, that these debts were owing by deceased; that, by their terms, he was liable for their payment, and had paid them, to be permitted to retain his *pro rata* share, as though they had been regularly probated. What we have said can only apply to payments made, or to portions of these notes that have been discharged and satisfied, at the time of the final trial, in stating the account. *Ralston* v. *Wood*, 15 Ill. 159.

This we regard as equitable and just, and violates no rule of law, and infringes the rights of no party in interest.

It is urged that the case of *Hughes* v. *Trahern*, 64 Ill. 48, announces a different rule, and one which requires the full amount of this claim to be set off. In that case, as in this, the estate of the deceased partner was insolvent, but in that case all of the rights of the parties had matured and attached whilst the parties were living. Here, the claim of appellant has arisen since the death of his partner. There, when the liability of the deceased partner became fixed, he was living, and creditors had acquired no liens, statutory or otherwise; whilst here, the rights of creditors attached on the death of Firman, and before appellant acquired this claim.

The case of *Stone* v. *Fargo*, 55 Ill. 71, is referred to as settling the doctrine contended for by appellant. Although some of the facts in that case are like this, there was this broad and controlling distinction: there, the estate was solvent, whilst here, it is insolvent. But, to the extent of permitting appellant to set off to the amount of his *pro rata* share of the estate, we recognize and adopt the principle upon which that case proceeds. Inasmuch as the estate was solvent, the rights of creditors were in nowise affected. So here, to the extent of the per cent this estate will pay on the claims against it, there is not insolvency, and to allow appellant a set off to that extent, does not injure the creditors of the estate.

But as the judgment of the court below is not in accordance with the views here expressed, it is reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SHELDON, dissenting: It seems to be admitted by the opinion of the majority of the court, had the surety here made these payments of the debts of his principal, Firman Mack, in the lifetime of the latter, that then they would have been a proper set-off. As the payment by the surety of his principal's debts was a compulsory one, by force of the

obligation of suretyship contracted in the lifetime of the principal, I think, as respects this question of set-off, the payments by the surety should be taken to relate back to the time his liability as surety was contracted, and be regarded, for the purpose of set-off, the same as if they had been made in the lifetime of the principal, Firman Mack.

Mr. JUSTICE DICKEY: I agree with Mr. Justice SHELDON. Our statute makes debts, not due, provable against an estate. The case of *Granger* v. *Granger*, 6 Ohio, 35, is not in point, for, under the Ohio statute, a debt not due at the death could not be set off against the claim of the administrator for a debt due at the death. On the same principle the case of *Walker* v. *McKay*, 2 Met. 294, is not in point. In our State the credits to which an administrator is entitled, as assets, consist not merely of the items which may be owing from the debtors of the estate, but of the *balances* which may be found due to the administrator as the representative of the deceased, upon a full settlement of all matters growing out of contracts made with the deceased in his life, whether due or not, at his death. When Firman Mack procured Uziah Mack to sign this note as his security, by implication of law he undertook and promised that, if Uziah should pay this note, he (Firman) or his legal representatives would refund the money to Uziah. The damages for the breach of this contract became provable against his estate when the contract was broken. This occurred before the amount due from Uziah, as surviving partner, accrued. I think the set-off should be allowed.