CENTRAL APPALACHIAN CO. et al. v. BUCHANAN.

(Circuit Court of Appeals, Sixth Circuit. November 28, 1898.)

Nos. 586, 587.

1. EQUITABLE SET-OFF—DAMAGES FOR BREACH OF WARRANTY—PARTY ENTITLED TO BENEFITS OF COVENANT.

Where the owner of certain mines leased them to a corporation, and at the same time, as a part of the same transaction, sold and conveyed to the agent of the corporation both real and personal property used in connection with the mines, conveying both by the same deed, containing covenants of general warranty and of seisin, the grantor having knowledge that the purchase was made for the corporation, and that it paid the purchase money, but the agent taking the title to himself for purposes of his own, and afterwards conveying to the corporation, such corporation is entitled to the benefits of the covenants both as to the real and personal property, and may set off in equity, as against a judgment recovered against it for rental of the mines, damages accruing from a breach of the warranty by reason of a failure of its title through a prior mortgage given by the grantor.

2. RECEIVERS—EFFECT OF APPOINTMENT—RIGHTS OF CREDITORS.

A receiver appointed for an insolvent corporation in a suit by its creditors is merely the custodian of the court, holding and protecting the property to await its ultimate disposition according as the right may appear. His appointment does not impose any liens upon the property in favor of the plaintiffs, nor affect the priority of liens, nor rights existing against the corporation.

3. EQUITABLE SET-OFF—EFFECT OF APPOINTMENT OF RECEIVER.

The appointment of a receiver for an insolvent corporation does not affect the right of a debtor of the corporation to an equitable set-off growing out of the breach of a covenant made by the corporation before the receivership.

4. SAME—MUTUALITY OF CREDIT—INSOLVENCY OF ONE PARTY.

The equitable right of set-off is not strictly limited to demands arising out of the same contract or transaction where insolvency exists.

5. SAME—UNLIQUIDATED DEMANDS.

That a claim is unliquidated is no objection to its being made the subject of a set-off in equity, where the party against whom it exists is insolvent. Under such circumstances, the court will restrain the enforcement of the demand against which it is to be applied, until the cross demand can be liquidated.

6. SAME—BREACH OF COVENANT—ACCRUAL OF RIGHT OF ACTION.

A corporation conveyed to another both real and personal property, by a deed containing covenants of general warranty and of seisin, at the same time leasing to the grantee other property. The grantor afterwards be-

came insolvent, and its receiver obtained a judgment against the grantee for rentals due under the lease. At the time the deed was made, all the property conveyed was subject to a mortgage made by the grantor, which was foreclosed, and the grantee was deprived of the property thereunder after the receiver obtained his judgment. *Held,* that the covenant of seisin as to both real and personal property was broken as soon as made, but as the full damages had not accrued at the time of the action by the receiver, and were not then the subject of a set-off at law, the grantee was entitled to have them set off in equity against the judgment in a subsequent suit brought by the receiver to enforce the same.

Appeal from the Circuit Court of the United States for the District of Kentucky.

This was a bill filed by the appellee, as a judgment creditor of the appellant, the Central Appalachian Company, Limited, to set aside certain alleged fraudulent conveyances of all of its property to the appellant, the International Development Company, and a mortgage thereof by the latter corporation to the appellant, the Corporation Trust Company, ostensibly for the purpose of securing an issue of bonds by the said mortgagor company aggregating $1,500,000. The judgment debtor, as well as its grantee in the conveyance assailed, filed answers and cross bills substantially identical. The answers admitted that the conveyance by the Appalachian Company to the International Company was not upon any valuable consideration, the purpose being a mere reorganization of the former company, and that the latter, as successor to the former, stood in the shoes of the grantor, and was liable for all of its just debts and liabilities. In respect to the mortgage to the Corporation Trust Company, these answers averred that it had been made with no fraudulent purpose, and only with the object of raising means to discharge the liabilities of the said Appalachian Company, and to carry out the business purposes of the reorganized corporation. The Corporation Trust Company was a corporation of the state of New Jersey, and had no agency within Kentucky. It was made a defendant under an order of the court, directing service upon it in the state of New Jersey. This was done. It neglected to plead within the time it was required to defend, whereupon judgment by default was entered against it. The principal questions to be determined upon this appeal arise upon the cross bills filed by the two answering corporations. These were filed for the purpose of setting off against the judgment in favor of the complainant, Buchanan, a demand for $60,000, claimed as liquidated damages arising out of a breach of the covenants in a certain conveyance of chattels and real estate theretofore made by the Southern Land Improvement Company to one E. H. Patterson, for the use and benefit of the Central Appalachian Company, Limited. The same cross demand was set up in the answers as a defense to any relief upon the judgment. The cross defendant, Buchanan, excepted to so much of the answers as set out this cross demand as scandalous, and also demurred to the cross bills for want of equity. The court below sustained both the demurrer and the exception. Thereupon amended cross bills were tendered, stating with somewhat more detail the facts upon which the set-off was asserted. The learned trial judge did not regard the difficulties in the way of the assertion of this claim as an equitable set-off as having been removed by the proposed amendments, and therefore declined to allow them to be filed. He also denied a motion made by the Corporation Trust Company to allow it to file an answer, and directed a decree as upon bill and answer to be entered against all the defendants, as prayed by the bill. All of the defendants have appealed.

The averments of the cross bill, as amended and tendered, were substantially as follows: (1) That Buchanan had been appointed receiver, January 3, 1894, by the circuit court of the United States for the district of Kentucky, under a bill filed in said court by Martha G. Merriweather and others, against the said Southern Land Improvement Company; that, by the order appointing him, he was directed to take possession of all the property of the said company, and to collect all of its debts, and for this purpose to bring all necessary suits in his own name or that of the corporation. (2) That the

judgment sought to be enforced in this case was upon a demand for rents which accrued to the said Southern Land Improvement Company under a lease of certain lands to the Central Appalachian Company, said lease bearing date October 13, 1892; that the demand so sued upon "was a demand which accrued to the Southern Land Improvement Company, and to no one else, and the said company was joined with the receiver as a necessary co-plaintiff in the action at law brought on said demand"; that said receiver "proceeded to collect said claim, only because of the fact that he was instructed by the court to collect all demands which were due or might become due to said company." (3) It is then averred that, upon the property thus leased, the said lessor "had certain valuable colliery properties, such as coke ovens and various appliances necessary to a colliery plant, and including the commissary house with the ground upon which it was situated." "These colliery properties," it is averred, "were indispensable to the use of certain coal mines, which were then open and in operation by the Southern Land & Improvement Company." Cross complainant then avers that it made a proposition through "its agent and general manager, E. H. Patterson," to buy these colliery properties, provided it could make a satisfactory lease of the mining privileges of said company upon its lands, and that terms satisfactory were agreed upon, which resulted in the lease of October 13, 1892, mentioned above, and in the purchase and sale of said colliery properties situated upon the leased lands. The conveyance of the purchased property was made at the same time, and bears the date of the lease, and it is averred that both "were indispensable parts of the same transaction." The conveyance aforesaid was made to E. H. Patterson, it being averred that it was so made by direction of Patterson, who conducted the transaction for the Central Appalachian Company; that $25,000 was paid in cash, and subsequently $35,000 more. It is averred that the Southern Land & Improvement Company knew that Patterson was buying the property for the Appalachian Company, and that its money was used in paying for it. It is averred that the grantor made the title to Patterson, binding him to convey same to the Appalachian Company, when the latter should acquire title to a certain amount of lands, having no interest in the condition, which was inserted for Patterson's purposes, and to better enable him to compel his principal to receive the titles to certain lands which he was engaged in selling or procuring for it. It is averred that this conveyance was therefore made to said Patterson in trust for the real and known purchaser, and that the seller intended the warranty and covenants of said conveyance "to inure to the benefit of the Central Appalachian Company."

This conveyance is made an exhibit to the cross bill, and the property sold is thus described: "(1) The colliery plant of coke ovens, consisting of one hundred in number, situate upon lands this day leased by the improvement company aforesaid to the Central Appalachian Company, Limited, of Belgium, lying between the junction of the right and left forks of Straight creek, and the present terminus of the Pineville, West Virginia & Tennessee Railroad. (2) All the miners' and operators' houses, being thirty-nine in number, and all other buildings now erected and standing on said leased lands and on either side of the right fork of Straight creek, including carpenter shop, butcher shop, pump house, power house, blacksmith shop, tipple, stables, and coke-oven stables. (3) All the tools and implements, all the tramway cars, tracks' scales, mile scales, machinery, mine railway tracks, and all the property of the improvement company, the first party hereto, now in place and being used by the improvement company in the operation of the mines and coke ovens now conducted by it, excepting only the teams, harness, wagons, and cars of the improvement company. (4) The building known as the 'Commissary Building,' together with the land upon which it stands, being a lot of seventy-five (75) feet front by one hundred (100) feet deep, it being understood that the land upon which the other structure stands is not sold or conveyed." This instrument contains the following condition, namely: "Said property is conveyed on condition that said Patterson will convey same, free of incumbrance or lien by him, to the Central Appalachian Company, Limited, of Belgium, whenever that company shall have received title to seventy-two thousand (72,000) acres of land in Southeastern Kentucky, un-

incumbered, and shall have placed the deed therefor of record, or lodged same for record,"—and concludes with a warranty and covenant in these words: "To have and to hold the said property, together with the rights and things and estate appurtenant thereto herein conveyed to him, the said second party, his heirs and assigns, forever, the said first party hereto warranting the title to the said property by covenant of general warranty; and said first party furthermore covenants that it is seised of a good and lawful and fee-simple title to said property."

December 7, 1893, Patterson conveyed all this property to the said Central Appalachian Company for the nominal consideration of one dollar. The cross bills then aver that, when this conveyance and warranty were so made to said Patterson for the use and benefit of the cross complainant, said property was subject to a mortgage for $500,000, made by said Southern Land & Improvement Company to the Louisville Trust Company, as trustee; that subsequently a decree foreclosing said mortgage for the satisfaction and payment of said debt was obtained in the said circuit court, and on August 11, 1896, said decree was executed by a sale of all the mortgaged property, including that so sold to cross complainant, and said property was purchased by the National Iron & Coal Company; that this sale was confirmed and deed made to the purchaser October 15, 1896; and that cross complainant has thus lost the property, real as well as personal, and has thereby been damaged to the full extent of the purchase price of $60,000, with interest. The insolvency of the said Southern Land & Improvement Company is also averred. The prayer is that the amount due upon the judgment in favor of Buchanan, receiver, be credited upon the larger amount due to cross complainant, and that the balance be satisfied out of the funds in the receiver's hands, etc.

Helm, Bruce & Helm, for appellants.
Richards, Baskin & Ronald, for appellee.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The principal question arising upon this appeal is as to the right of the Central Appalachian Company to set off against the judgment in favor of Buchanan, as receiver of the Southern Land & Improvement Company, the claim in its favor against the Southern Land & Improvement Company arising out of the breach of the covenants of the latter company in its conveyance to E. H. Patterson, of October 13, 1892. As the question arises upon demurrer, the facts stated in the cross bill and the proposed amendments thereof must be taken as confessed. The objections to the cross complainant's asserted right of set-off, which have been urged by counsel for the appellee, are numerous, and will be considered separately.

1. It is said that the covenants breached ran to E. H. Patterson, and not to the Central Appalachian Company. The conveyance to Patterson included both realty and chattels. The covenants extended to the title of the vendor to both classes of property. There were two covenants,—one of general warranty, and one that the vendor was "seised of a good and lawful fee-simple title to said property." That these covenants passed with the land included in the conveyance to the assignee of Patterson, the said Central Appalachian Company, is conceded. To the extent, therefore, that the covenants applied to the land, the Central Appalachian Company was entitled to enforce them. As the

demurrer was general, and went to the whole of the equity of the cross bill, it should for this reason alone have been overruled, unless there were other fatal objections going to the whole equity of the cross bill. But we are of opinion, under the averments of the bill, that the covenants applicable to the chattel property included in the conveyance inured also to the use and benefit of the same corporation. The purchase was made by Patterson for the Central Appalachian Company, and this the vendor knew. The purchase money paid was the money of the real purchaser, and this, too, the vendor knew. The condition that Patterson should convey same to the Central Appalachian Company upon the happening of a condition named actually occurred, and the conveyance was so made. But this mode of taking title, it is averred, was one devised by Patterson to subserve a scheme of his own against his principal. It was one in which the vendor had no interest whatever. These circumstances make the conveyance one for the use and benefit of Patterson's principal,—a principal known to the vendor,—and a court of equity would have regarded him as a naked trustee. A recovery by Patterson upon these facts for a breach of these covenants would inure to his principal. Equity abhors circuity of action, and under such circumstances will permit the beneficiary to avail itself of the benefits of the warranty by way of set-off.

2. It is urged that this right of set-off cannot be asserted against a judgment in favor of a receiver of the warrantor. The record in which Buchanan was appointed receiver is not filed. We must assume that he was appointed under the usual proceeding by creditors against an insolvent business corporation, and that no priority was sought or acquired. This is in accord with the averments of the cross bill touching this appointment, which in substance are that he was appointed for the purpose of holding possession of the assets of the company, and of collecting its debts, and that his suit was for rents, which accrued to the Southern Land & Improvement Company as lessor, under a contract with the Central Appalachian Company as lessee, and that "his recovery was alone in right of that company," and in pursuance of an order that he should "collect all demands which were due or should become due" to said company. Such an appointment does not change the title or impose any lien upon the property in possession of the receiver. He is a mere custodian of the court, holding and protecting the property to await its ultimate disposition by the court, according as the right might appear. No right of priority is ordinarily fixed by such appointment. It cuts off the right to acquire liens, but imposes none by virtue of the step alone. Railroad Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787; Union Bank v. Kansas City Bank, 136 U. S. 223–236, 10 Sup. Ct. 1013; New York, P. & O. R. Co. v. New York, L. E. & W. R. Co., 58 Fed. 268–278; High, Rec. § 5.

The receiver took the claim of the Southern Land & Improvement Company against the Central Appalachian Company in the plight and condition in which it then was. If it was subject to an equitable set-off in the hands of the Southern Land & Improvement Company, it was subject to the same right of set-off in his hands. This must be so from the well-settled principles in respect to the title and right of such receivers, and from analogy to seizures of choses in action under process

more stringent than that of a receivership. Thus, in North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596–618, 14 Sup. Ct. 710, a garnishee, after a judgment at law in favor of the garnisher, was permitted by a bill in equity to restrain the garnishing creditor from enforcing payment of the judgment until the amount due upon an unliquidated claim for damages arising from the breach of a contract, in existence when the garnishment proceedings were instituted, could be ascertained and be set off against the defendants' judgment. This was upon the ground, as stated by Mr. Justice Jackson, that "the legal operation and effect of the garnishment proceedings, and of the final order made therein, was only to impound what was legally and equitably due from the garnishee after the adjustment of the claims between the latter and the principal debtor, and place it beyond the control of the debtor and subject to collection for the benefit of the attaching creditor." So, in Kentucky an assignee under a general assignment is not a purchaser for value, and can assert no equity which could not be asserted by the assignor himself. Bridgford v. Barbour, 80 Ky. 529; Bank v. Payne, 86 Ky. 446–466, 8 S. W. 856.

In Chenault v. Bush, 84 Ky. 528, 2 S. W. 160, the right of a debtor to set off a note included within a general assignment by his creditor was held not to have been cut off by the assignment, nor by the appointment of a receiver to take the assigned property, and hold and collect same for the benefit of creditors of the assignor. In considering the effect of the assignment upon the debtors' right of set-off, the Kentucky supreme court, through Judge Bennett, said:

"If the appellant, as receiver, represented assignees of Williams & Stevenson for value, the rule might be different; probably it would be different. Or, if appellee had acquired his right to the debt pleaded by him as a set-off, after the assignment for the benefit of creditors, the rule would be different. But the appellant, as receiver, does not represent assignees for value. The assignees are merely the voluntary representatives of Williams & Stevenson for the benefit of their creditors. The equitable right acquired by these creditors by reason of the assignment consisted in the right to an equal division of the assignor's assets among themselves. These assets are the assets found to be due after deducting all just set-offs, counterclaims, discounts, etc. This balance they are entitled to, and no more. This is all the fund Williams & Stevenson would have to satisfy their creditors, in case they had made no assignment for the benefit of their creditors. Had Williams & Stevenson sued on these notes in place of the receiver, there is no doubt that the appellee could use as a set-off the amount he had paid the bank for Williams & Stevenson on said joint obligation, which would have disabled Williams & Stevenson to that extent to meet the demands of their other creditors. Instead, the voluntary assignees of Williams & Stevenson—rather, the receiver—bring suit on these notes; so, to say that the creditors of Williams & Stevenson, by the voluntary assignment, can compel appellee to pay said notes in full, and then receive only a pro rata of the debt, which he was compelled to pay for Williams & Stevenson, would be to put appellee in a worse position, and the other creditors in a better position, by the failure of Williams & Stevenson and the appointment of assignees."

The right of set-off at law is of statutory origin. But courts of equity, independently of any statute, have from an early day granted relief beyond the terms of such statutes when the particular circumstances have been such as to raise an equity in support of the claim. So, courts of equity of the United States have been peculiarly alert to prevent the defeat of an equitable right of set-off by the interposition

of assignments, receiverships, or statutory liquidations, and to extend the right whenever there appeared any substantial equity in favor of the claim. Thus, in Scammon v. Kimball, 92 U. S. 362, a banker was allowed to set off the demand of an insurance company for money deposited, by the amount due on its fire policies issued to and held by him, although the insurance company was bankrupt and in the hands of an assignee.

In Carr v. Hamilton, 129 U. S. 252, 9 Sup. Ct. 295, a debt for money loaned and secured by mortgage was allowed to be set off by the equitable value of an endowment policy held by the mortgagor in the mortgagee insurance company, notwithstanding the latter was insolvent, and its assets in the hands of a liquidator, and although the endowment policy had not matured at date of liquidation, Justice Bradley saying:

"Where a holder of a life policy borrows money of his insurer, it will be presumed, prima facie, that he does so on the faith of the insurance, and in expectation of possibly meeting his own obligation to the company by that of the company to him, and that the case is one of mutual credit, and entitled to the privilege of compensation or set-off whenever the mutual liquidation of the demands is judicially decreed on the insolvency of the company. The case of Scammon v. Kimball, 92 U. S. 362, is in concurrence with this view. It was there held that a banker, having insurance in a company, which was rendered utterly insolvent by the great Chicago fire of 1871, by which the banker's insured property was consumed with the rest, had a right to set up the amount of his insurance against money of the company in his hands on deposit. The insurance was not a debt due at the time of the insolvency. It became due afterwards, when the banker had performed all the conditions required in such cases."

In Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, it was held that the receiver of a national bank, closed by order of the examiner, took the assets in trust for creditors, and subject to all claims and defenses that might have been interposed against the insolvent corporation. So, in North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 14 Sup. Ct. 710, the equitable right of set-off was held not to be defeated by the recovery of a judgment in favor of a garnishing creditor of the complainant, who sought to set off such judgment by an unliquidated demand for damages which accrued after the judgment, but upon a contract then in existence. The insolvency of the creditor against whom the right of set-off was asserted was regarded as a sufficient equity to justify relief.

3. This claim of set-off arises out of the same transaction as the judgment sought to be set off. The one demand is for rents of lands and mineral rights; the other is for breach of covenants in a conveyance of chattels, constituting a colliery property situated upon the leased lands. The two contracts were made the same day, and each was dependent on the other. The colliery properties were needed to exercise the mineral rights in the leased lands. Stone v. Fargo, 55 Ill. 71; Railroad Co. v. Griggs, 12 Mich. 45. In Stone v. Fargo, supra, a claim for damages arising from breach of a bond given by a vendor of land to the vendee, conditioned to hold him harmless against liability upon certain purchase-money notes outstanding, which had been given by the vendee to a third person as purchase money of the same land, was set off in equity against purchase-money notes due the vendor. In Railroad Co. v. Griggs, supra, a bill in equity was sustained, and complain-

ant allowed to set off purchase-money notes by the amount of two mortgages paid by the purchaser which were a lien on the land, there being a covenant against incumbrances, and the vendor insolvent. It would seem, however, that, under the law of Kentucky, there was a statutory right of set-off existing in respect to all demands arising out of contract, regardless of mutuality of credit. Civ. Code Ky. § 96; Shropshire v. Conrad, 2 Metc. 143; Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24. Neither, would it seem, is the equitable right of set-off limited to credits strictly mutual, if insolvency exists. North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., supra.

4. That the claim of the appellant, the Central Appalachian Company, is unliquidated, is no objection in a court of equity, if insolvency exists. Under such circumstances, the court will restrain the enforcement of the demand against which the set-off is to be applied until the cross demand can be liquidated. North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., supra. So, in Kentucky,—Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24.

5. It is said that the claim asserted as a set-off had not arisen when the receiver was appointed, nor when he recovered his judgment. The contract under which the set-off arose was in existence when the receiver was appointed, and the warrantor in that contract was then insolvent. Under the case, so often cited, of North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 14 Sup. Ct. 710, this fact was in itself enough. But a right of action for breach of one of the covenants had arisen when the receiver was appointed. The conveyance to Patterson included both real and personal property. There was a covenant of general warranty, and a covenant of seisin. Both the real and personal property was then incumbered with a prodigious mortgage, which, since the receiver's judgment, has been enforced, and the covenantee has been thereby deprived of the property so conveyed. The covenant of seisin as to the real estate was therefore broken so soon as made. The covenant of general warranty has since been broken by the grantee's ouster from the property by the mortgage foreclosure decree. The vendor of personal property in possession impliedly warrants the title by the act of sale. His sale is an assertion of title. This is elementary. This implied warranty of title is held in Kentucky to be broken as soon as made if the title was defective, and a right of action at once arises. Payne v. Rodden, 4 Bibb, 304, 305; Scott v. Scott's Adm'r, 2 A. K. Marsh. 217. So it is held in Tennessee (Word v. Cavin, 1 Head, 506); and in Massachusetts (Perkins v. Whelan, 116 Mass. 542). This implied warranty the Kentucky courts assimilate to an express covenant of seisin in a conveyance of real estate. Tipton v. Triplett, 1 Metc. 570; Chancellor v. Wiggins, 4 B. Mon. 201; Scott v. Scott's Adm'r, supra.

But if the covenant of warranty of title is express, and not implied, the same cases hold that an action will not lie until a recovery of the property can be averred and proven. In this conveyance we have both a general warranty of title and a covenant of seisin. The vendor of the chattels expressly covenanted that it was "seised of a good and lawful fee-simple title to said property." The covenantor had no such fee-simple or other good and lawful title. This covenant was therefore

broken when made. This is by analogy to the same covenant in deeds of real estate, and we see no reason why the rule in respect to such a covenant in a conveyance of realty shall not be applied to a like covenant in a conveyance of chattels. Thus, a right of action for breach of this covenant of seisin had arisen when the receiver was appointed, and when he recovered his judgment. The damage had at neither date fully accrued. The mortgage covered this and other property. The latter might discharge the burden. The event has proven that it was insufficient. The fact remains, though, that, when the receiver recovered his judgment, the full damage had not accrued, and could not have been made to appear. These damages were unliquidated. They were therefore not the subject of set-off at law, but may be set off in equity when insolvency or some other equity exists in support of the right, as in North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., supra.

In Kentucky, unliquidated damages were not at law the subject of set-off. Shropshire v. Conrad, 2 Metc. 143; Taylor v. Stowell, 4 Metc. 175; Williams v. Gilchrist, 3 Bibb, 49. But it was held that, if the plaintiff be insolvent or a nonresident, any claim for unliquidated damages arising out of contract might be set off. Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24. The distinction between courts of law and equity is not maintained in Kentucky, and relief is administered according to principles of law or equity, as the facts demand, and upon the same pleading. Thus, no bill in equity was needed to obtain the benefits of the equitable doctrine of set-offs; and the set-off was allowed in Forbes v. Cooper, supra, upon equitable principles, and not because, at law, a claim for unliquidated damages was the subject of set-off. It is clear, therefore, from the foregoing considerations, that the right to apply to a court of equity to stay the enforcement of the judgment at law against the appellant is not defeated because the damages had in part accrued by reason of the breach of the covenant of seisin at the time the suit at law was begun.

It was observed by the master of the rolls in Jeffs v. Wood, 2 P. Wms. 129, that:

"It is against conscience that A. should be demanding a debt against B., to whom he is indebted in a larger sum, and would avoid paying"; and that "in these cases equity will take hold of a very slight thing to do both parties right."

In Carr v. Hamilton, 129 U. S. 255, 9 Sup. Ct. 295, Justice Bradley said that:

"Natural justice and equity would seem to dictate that the demands of parties mutually indebted should be set off against each other, and that the balance only should be considered as due."

This natural justice and equity may be asserted in many cases after judgment upon one of the debts; and one of these cases is where the party against whom it is asserted is insolvent, and there was no culpable negligence in failing to rely upon it as a legal set-off. Railroad Co. v. Greer, 87 Tenn. 698, 11 S. W. 931, and cases cited.

6. The Corporation Trust Company was properly brought into court by service of the subpœna upon its assistant treasurer in its general office in New Jersey. The return of the serving marshal, together with his affidavit as to the usual mode of serving process upon its assistant

treasurer by direction of the superior officers of the corporation, is satisfactory evidence that this officer was designated by the corporation as the proper officer to make service upon. The delay in making defense is not explained. No abuse of the sound discretion of the circuit court is shown in refusing to set aside the decree pro confesso. But, inasmuch as the defense of a set-off set up by the cross bills of the other two appellants will necessarily inure to the benefit of the Corporation Trust Company, the final decree as to it, as well as the other appellants, will be set aside and reversed. The decree pro confesso as to the Corporation Trust Company will not be set aside, nor any answer allowed; but that company will, on final decree, be given the benefit of the defenses made by the Central Appalachian Company. The case will be remanded, the demurrers overruled, and the cause proceeded with in accord with the opinion of this court.