### SCHWARZ et al. v. HARRIS.

(District Court, D. Oregon. July 28, 1913.)

No. 3,095.

1. SALES (§§ 343, 344*)—RIGHT TO PURCHASE PRICE—CONVERSION—JUDGMENT—EFFECT.

Plaintiffs having purchased hops from certain Chinamen and having been vested with the title, the Chinamen sold and delivered the hops to defendant's intestate, whereupon plaintiffs recovered judgment against the latter in conversion. Held, that the judgment stood in the place of the hops, and on collection thereof, but not before, plaintiffs would be liable to the Chinamen for the purchase price plaintiffs had agreed to pay.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 947–955; Dec. Dig. §§ 343, 344.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. COURTS (§ 371\*)—FEDERAL COURTS—EQUITY JURISDICTION—LAW OF DOMICILE.**

While federal equity jurisdiction extends to the administration of decedents' estates, where it concerns citizens and residents of different states, the courts, in exercising such jurisdiction in the enforcement of claims against personal representatives, administer the law of the state of the domicile, and are governed by the local rules and regulations applicable to the adjustment of such claims.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 907, 972–976; Dec. Dig. § 371.\*]

**3. EXECUTORS AND ADMINISTRATORS (§ 242\*)—CLAIMS—EQUITABLE SET-OFF.**

Under the Oregon statute, requiring that a person presenting a claim in probate shall make affidavit that the amount claimed is justly due and that there is no just counterclaim to the same, a demand against which there exists an equitable set-off or counterclaim may be adjusted in the court of equity before it is allowed and paid out of the decedent's estate.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 242.\*]

**4. SET-OFF AND COUNTERCLAIM (§ 8\*)—EQUITABLE SET-OFF—CLAIM AGAINST ESTATE.**

Plaintiffs recovered judgment against defendant for conversion of certain hops, which defendant's intestate had bought from Chinese raisers and paid for; plaintiffs having previously bought the hops and become vested with the title. Plaintiffs, however, had not paid for them, and after judgment defendant obtained an assignment from the sellers of their claim against plaintiffs for the price. Intestate's estate, against which the judgment was filed as a claim, was solvent, and it appeared that plaintiffs were not residents of the state. *Held*, that plaintiffs' liability for the purchase price so assigned constituted a valid equitable set-off against the judgment.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 9–11; Dec. Dig. § 8.\*]

In Equity. Action by Moritz Schwarz and others, doing business as Benjamin Schwarz & Sons against Joseph Harris, as administrator de bonis non of the estate of John Kennedy, deceased. Judgment for plaintiffs, less a set-off pleaded by defendant.

John A. Carson, of Salem, Or., for plaintiffs.
Martin L. Pipes, of Portland, Or., for defendant.

WOLVERTON, District Judge. The facts out of which this litigation springs are sufficiently stated in an opinion heretofore rendered in the same cause. See (C. C.) 156 Fed. 316.

[1] It is clear that, had plaintiffs received the hops from the Chinamen, they would have become indebted to the Chinamen for the purchase price thereof. There is a dispute whether the hops were delivered to the plaintiffs before Kennedy took them. But let us assume that they were not so delivered. Plaintiffs have recovered judgment against Kennedy for their value, and, the action being in trover, the judgment is effective to transfer title as between plaintiffs and Kennedy to the latter, and it stands, as it respects the former, in the place and stead of the hops. It could hardly be urged that the Chinamen would be entitled to their purchase price while plaintiffs

had neither received the hops nor realized upon their judgment against Kennedy; for Kennedy might be insolvent, and the plaintiffs would have received nothing in pursuance of their contract with the Chinamen to deliver the hops. So that, until Kennedy has paid his judgment, at least, the Chinamen's claim for the purchase price of the hops against plaintiffs could avail them nothing, and an assignee from them could obtain no greater rights than they had. However, when plaintiffs shall have received the amount of their judgment from Kennedy, there seems no good reason why they should not pay the Chinamen or any one standing in their right; for when has it been decreed in equity that a person shall have something for nothing? In legal effect, the plaintiffs would have the hops, and, having them, why should they not pay for them? If Kennedy wrongfully took the hops from the Chinamen, so that they could not perform their contract with plaintiffs by delivery, why should not the Chinamen be entitled to their purchase price, when the hops have been restored and delivery had? But we have seen that, when the plaintiffs have been paid their damages equivalent to the value of the hops, then will the plaintiffs have in legal effect received the hops, and thus will the Chinamen's right to the purchase price be complete.

There is no charge that the Chinamen converted the hops. Nor could they have done so until title was vested in the plaintiffs by delivery. Until so vested, the plaintiffs' right of action against the Chinamen would have been upon the contract, for breach thereof for failure to deliver, and not in tort. So that, under the hypothesis that Kennedy wrongfully took the hops from the Chinamen and thus prevented delivery, the Chinamen would be entitled to recover the purchase price which the plaintiffs agreed to pay therefor, whenever the plaintiffs received the full value of the hops which the Chinamen agreed to deliver; and the fact that the plaintiffs had gotten the hops or their value through some one else would not alter the case.

The case is illumined by supposing that Kennedy, after taking the hops, had concluded that he had no right to them, and had voluntarily delivered them to plaintiffs, or that plaintiffs had recovered them from Kennedy by replevin. The plaintiffs could not then avoid payment of their price because the Chinamen did not deliver the hops directly to them. If, on the other hand, there was delivery of the hops to the plaintiffs, and Kennedy took them from plaintiffs, the Chinamen's right of action against plaintiffs for their value would have accrued, and the litigation that afterwards followed between plaintiffs and Kennedy could not have affected that right, because the plaintiffs would have gotten what they contracted for.

Now, whatever right the Chinamen had has been assigned to Kennedy, and the question to be resolved is whether the latter's representatives can avail themselves thereof as against plaintiffs' judgment. I have been speaking of Kennedy as though he were defendant but for convenience. This judgment is against the wife as administratrix of his estate, and, since the present suit was started, Joseph Harris has been substituted in her stead as administrator de bonis non.

The purpose of this suit is to prevent the defendant from availing

himself of the assigned claim from the Chinamen in any way, as a set-off or otherwise, against the plaintiffs' judgment.

[2] It is settled law that federal equity jurisdiction extends to the administration of the estates of deceased persons, where it concerns citizens and residents of different states. But in exercising such jurisdiction in the enforcement of claims against the personal representatives of decedent's estate, federal courts but administer the law of the state of the domicile, and are governed by the local rules and regulations applicable in the adjustment of such claims. Security Trust Co. v. Black River Nat'l Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 147; Newberry v. Wilkinson et al., 199 Fed. 673, 118 C. C. A. 111.

[3] A person, in presenting his claim in probate in this state for allowance by the executor, administrator, or probate judge, as the case may be, must make affidavit that the amount claimed is justly due, and that there is no just counterclaim to the same. Thus it is the intendment of the law that no debt shall be allowed or paid out of the estate, unless it is just and represents a true balance due from such estate. While the statute seems to contemplate legal demands only, there is no good reason why a demand against which there exists an equitable set-off or counterclaim may not be adjusted in a court of equity before it shall be allowed or paid out of the decedent's estate. In Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596, 615, 14 Sup. Ct. 710, 715 (38 L. Ed. 565), wherein it was sought to set off an unliquidated claim for damages against a demand which had been ordered paid at law in a garnishee proceeding, it was said:

"Cross-demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. Again, it is well established that equity will entertain jurisdiction and afford relief against the collection of a judgment where in justice and good conscience it ought not to be enforced, as where there is a meritorious equitable defense thereto, which could not have been set up at law, or which the party was, without fault or negligence, prevented from interposing."

The set-off as sought was allowed. To a like purpose, see, also, Central Appalachian Co. et al. v. Buchanan, 90 Fed. 454, 33 C. C. A. 598, and Brown v. Pegram et al. (C. C.) 149 Fed. 515.

[4] Now, whether the defendant's right to the purchase price of the hops is contingent upon the payment of the judgment or not, it appears that the Kennedy estate is solvent, and that the judgment will be paid in full, whether it remains as it is or is reduced by the amount of the purchase price agreed to be paid the Chinamen by plaintiffs; and it furthermore appears that the plaintiffs are nonresidents of the state, which in itself is a ground for equitable interposition. See Rolling Mill Co. v. Ore & Steel Co., supra. Indeed, plaintiffs can have their right of suit in a federal court only by reason of being nonresidents of the state. Under such conditions, it would seem to be only equitable and just to set off the claim of Kennedy's estate derived from the Chinamen against the judgment, rather than to require the estate to pay the judgment in full and remit it to its action in another state to recover what is or would be its due. I come the more readily to this

conclusion, inasmuch as my memory is refreshed by a reference to my instructions in the case in trover; for there the question of the plaintiffs' right to a recovery was made to depend with the jury upon whether possession as it respects the hops had passed to plaintiffs prior to the time when Kennedy took them.

I conclude that plaintiffs are entitled to recover from the estate of Kennedy the difference between the price of the hops, which plaintiffs agreed to pay the Chinamen, and the amount of their judgment and costs, with accrued interest thereon to the present date, together with the costs and disbursements of this suit.