CASE 72—PETITION EQUITY—DECEMBER 7.

# Chenault, Receiver, &c., v. Bush.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. THE OBLIGATION OF ONE CO-OBLIGOR TO CONTRIBUTE TO ANOTHER in the event the latter pays more than his part of the joint debt, springs up, in equity, at the time the relation of co-obligors is entered into, and not when the payment is made, the right being simply consummated then.

2. SET-OFF—ASSIGNMENT.—Therefore, where, after such a joint undertaking is entered into, but before its maturity or payment, one of the co-obligors makes an assignment for the benefit of his creditors, and the other afterwards pays the joint debt, the latter may, in an action against him by the assignees on a note executed by him to the assignor, his co-obligor, set-off the latter's aliquot part of the joint debt. The rule, however, would probably be different if the action were by an assignee for value.

3. EXECUTION LIEN—FAILURE OF CONSIDERATION.—Where property for which a note was executed was afterwards levied on and sold under an execution from the circuit court against the vendor, which was in the hands of the sheriff at the time the obligor in the note purchased the property, there was a failure of consideration.

W. H. HOLT AND H. L. STONE FOR APPELLANT.

1. Appellee's claim, if he has any, is not against the *firm* of Stevenson & Williams, but it is against James G. Williams and W. D. Stevenson

as individuals, and he must look to their individual assets respectively for contribution.    (Northern Bank of Ky. v. Keiser, 2 Duv., 169; Whitehead v. Chadwell, *Ibid.*, 432.)

2. It is alleged, and not denied, that the firm name of Stevenson & Williams, if signed at all to the note sought to be used as a set-off, was signed without authority of both members of said firm.    This is a *special* plea of *non est factum*, and it being essential, in such a case, to allege the facts constituting the special *non est factum*, they are admitted, if not denied.    (Civil Code, sec. 126; Taylor v. Craig, 2 J. J. Mar., 459; McCoy v. Hill, 2 Litt., 375; Bank of The Commonwealth v. Curry, 2 Dana, 142.)

3. The signing of one's name as surety by another must be done in conformity to authority given in writing.    (Gen. Stats., chap. 22, sec. 20.)

4. The note sought to be used as a set-off is not available as such, because it was not due or paid or owned by the defendant until after the assignment of the notes sued on, and *notice thereof to him*.    (Walker v. McKay, 2 Met., 294; Baker v. McKim, MS. Op., Dec. term, 1857; Bowman v. Halstead, 2 Marsh., 201.)

5. The principal does not become the debtor of the surety until the latter pays the debt for which he is liable as surety.    (Walker v. McKay, 2 Met., 194.)

6. The court should have sustained exceptions to depositions because of leading questions. and because of " hearsay " testimony.

7. The claim that the *firm* of Stevenson & Williams *as such* was a member of the firm of J. G. Williams & Co. is not sustained by the evidence; but even conceding that it is, one firm *as a firm* can not be a single member of another firm or partnership; the individual members of the first firm must be regarded as the members of the second firm.

W. M. BECKNER FOR APPELLEE.

1. The evidence establishes the fact that the firm name of Stevenson & Williams was signed to the note sought to be used as a set-off, with the knowledge and approval of both members of the firm.

2. As the note to the bank was the joint obligation of Stevenson & Williams and of appellee, and appellee paid it in full, he is entitled to set-off the half he paid for Stevenson & Williams against his liability to them.

3. As it does not appear that appellant's exceptions to depositions were overruled, they will be treated as waived.    But even if considered, the testimony objected to must be held to be competent.

4. As the reply contained nothing except a traverse and a plea of *non est factum*, a rejoinder was not necessary.

5. The $590 note sued on was without consideration.

vol. 84—34

J. J. CORNELISON on same side.

1. The exceptions to depositions were not well taken.    The testimony excepted to was competent.
2. A rejoinder was not necessary, as the reply contained only a plea of *non est factum.*
3. The evidence fully and completely establishes every allegation of the answer, set-off and counter-claim.
4. There was a failure of consideration for the $590 note sued on.

JUDGE BENNETT delivered the opinion of the court.

On the 18th of December, 1882, J. G. Williams and W. D. Stevenson, as partners, trading under the firm name of Williams & Stevenson, sold to the appellee, V. W. Bush, several pieces of property.  Appellee executed to the said firm several notes for said pieces of property, due and payable at short intervals of time. Among the property thus bought were four mules, four sets of harness, one log wagon and chains, at the price of $590, for which appellee executed his note, due and payable thirteen days after date.   Shortly after this transaction, and before the maturity of any of said notes, Williams & Stevenson, both as a firm and as individuals, made a deed of assignment of all of their property, in trust for the benefit of their creditors. The assignees accepted the trust, and brought suit to the February term of the Clark county Common Pleas Court, for the purpose of settling the said estate, and distributing the proceeds among the creditors of the assignors.   At said term of court the appellant was appointed receiver to collect all accounts, notes and choses in action due the firm of Williams & Stevenson.   On the 7th of March, 1883, the appellant, as receiver, brought suit in the Montgomery Circuit Court against the appellee, in which he sought to recover judgment on the above mentioned notes.

The appellee contested the appellant's right to re-cover on the note of $590 upon the ground of a failure of consideration, which consisted in the fact that, at the time of the purchase of said mules, harness, etc., the sheriff of Montgomery county held in his hands an execution, which was alive and in full force, in favor of R. C. Robinson and against the firm of Williams & Stevenson, which execution created a lien on said mules, harness, etc., they being at the time in Mont-gomery county, prior and superior to the right of ap-pellee as purchaser of said property ; and that said prior and superior lien, by virtue of said execution, was enforced by the levy, seizure and sale of said property to satisfy said execution lien.

The execution, having been issued from a circuit court, created a lien, as soon as it came to the hands of the sheriff of Montgomery county, upon all of the property subject to execution in said county belonging to Williams & Stevenson, which lien was superior to the appellee's after acquired right to said property by purchase from Williams & Stevenson. The proof is clear that, at the time of appellant's purchase of prop-erty, it was in Montgomery county, and that said exe-cution was in the hands of said sheriff, alive and in full force, and that the property was, after the pur-chase, levied on and sold to satisfy said execution. The lower court, therefore, sustained the plea of a fail-ure of consideration, and relieved the appellee from the payment of said note. In this the court did right.

The appellee pleaded a set-off of six thousand dollars against the other notes sued on by appellant. Issue was joined on this plea.

The proof shows that the firm of Williams & Stevenson, as a firm, entered into partnership with appellee under the firm name of J. G. Williams & Co., for the purpose of buying walnut lumber, the firm of Williams & Stevenson representing one-half interest and the appellee the other half interest; that they purchased a large lot of walnut lumber from one Davis; that, for the purpose of taking the notes which they had executed for the price of said lumber, they, on the 5th of October, 1882, executed to the Clark County National Bank a note, due and payable four months after date, for $12,353.75, which note was signed by the firm of Williams & Stevenson, by J. G. Williams, and the appellee; that on the 24th of February, 1883, the appellee, with his own money, paid off said note in full, and took an assignment of it from the bank to himself. The foregoing facts are clearly established by the proof as it appears in the record before us. The sum pleaded as a set-off by appellee consists of one-half of the amount he paid in taking up said note.

The note, at the time of the assignment by Williams & Stevenson, was not due, nor was it paid off by appellee until after said assignment and the acceptance of the trust by the assignees, but was paid off before the appellant, as receiver, instituted suit against appellee on the notes executed by him to Williams & Stevenson. The appellant contends that, as Williams & Stevenson, at the time of their assignment for the benefit of creditors, were not indebted to appellee on account of their joint liability with him on said note to the bank as co-principals, his subsequent payment of said liability in full, and with his own money, was not an available set-

Chenault, Receiver, &c., v. Bush.

off, either at law or in equity, of one-half of the amount so paid, against the notes sued on by appellant, because said Williams & Stevenson only became indebted to appellee for one-half of said liability from the time he paid it to the bank; and at the time of said payment, the title to said notes had passed to their assignees in trust for the benefit of their creditors.

The appellant, in support of this view, cites several cases, among which is Walker v. McKay, 2 Met., 294. The facts of that case were, that Caroline Walker held a note on J. B. Walker, which, being due, she assigned to McKay for value. J. B. Walker was immediately notified of the assignment. He was subsequently compelled to pay a note on which he was bound as the surety of Caroline Walker. She was insolvent not only at the time of the assignment, but also at the periods when both notes were executed. J. B. Walker pleaded the sum so paid as a set-off against the note assigned by Caroline Walker to McKay. The question actually decided by the court in that case was, that as McKay was an assignee of the note on J. B. Walker for value, and as J. B. Walker had notice thereof, and had not paid the note on which he was bound as the surety of Caroline Walker at the time of the assignment and notice, he could not plead the amount subsequently paid in discharge of said note as a set-off against the note given by him to Caroline Walker in the hands of her assignee for value. The other cases cited by counsel for appellant decide the same principle. The arguments adduced in support of the principle, it is true, mean something more, but by them we are not bound. But these cases

do not meet the question here.    The question here is,
where one insolvent co-obligor makes an assignment of
his property and assets for the benefit of his creditors,
and among the assets assigned is a note on his co-obli-
gor, can that co-obligor who, after the assignment, has
paid a debt for which, as between themselves, they
were equally bound as co-obligors before the assign-
ment, plead his co-obligor's aliquot part of said debt
as an offset against his individual debt in the hands
of the assignee?

To determine the question it is important to ascertain
the relation in which co-obligors stand to each other.

We understand that co-obligors at law are liable to
each other for contribution upon the principle of im-
plied contract; that is, as soon as they enter into a
joint undertaking, the law implies a promise of each to
each that he will do what he is bound in natural justice
and equity to do; that is, pay to the other any sum
that he may pay on account of the joint undertaking
over and above his proportion.    The law, at the very
moment the contract is entered into, implies this prom-
ise of each to each to indemnify and save the other
harmless, and make him whole on account of any sum
that he may pay for the other.

It is well settled that *indebitatus assumpsit* will lie
by one co-obligor who has paid more than his share to
recover contribution from his co-obligor.    And this im-
plied obligation is founded upon a natural duty which
the co-obligors are presumed to recognize and consent
to at the time they enter into the joint undertaking or
assume the joint liability.    So in equity, without refer-
ence to contract, express or implied, the obligation

to contribute rests upon natural principles of right, which spring up at the time the relation of co-obligors is entered into, and is consummated when one co-obligor pays more than his part of the debt. A and B purchase property on their joint credit; each one receives his part of the property purchased. A agrees with B that when their joint debt falls due, that he will pay B's part of said debt if B is not ready to pay it then, and B agrees that if A does so, he will pay him back. When the debt falls due, A, pursuant to his promise, pays B's part. The promise is supported by a sufficient consideration—the nature of the enterprise they entered into—and B is bound to A by this contract not merely from the time A pays B's part of the debt, but from the time the agreement was made. If they are silent, the law implies for them just such an agreement.

The fact will not be questioned that, had Williams & Stevenson brought suit on the notes executed to them in place of the appellant, as receiver, that appellee's offset as against them would have been available, because he had paid said sum for them upon their joint liability, which they, at law, were under an implied promise to repay, not from the time of the actual payment by appellee, but from the time the joint undertaking was entered into. In equity the same obligation resting in natural justice sprung up at the moment the joint obligation was entered into.

If the appellant, as receiver, represented assignees of Williams & Stevenson for value, the rule might be different—probably it would be different. Or, if appellee had acquired his right to the debt pleaded by him as

a set-off, after the assignment for the benefit of cred-
itors, the rule would be different. But the appellant,
as receiver, does not represent assignees for value. The
assignees are merely the voluntary representatives of
Williams & Stevenson for the benefit of their creditors.
The equitable right acquired by these creditors by
reason of the assignment consists in the right to an
equal division of the assignor's assets among them-
selves. These assets are the assets found to be due
after deducting all just set-offs, counter-claims, dis-
counts, etc. This balance they are entitled to and no
more. This is all the fund Williams & Stevenson
would have to satisfy their creditors, in case they
had made no assignment for the benefit of their cred-
itors. Had Williams & Stevenson sued on these notes
in place of the receiver, there is no doubt that the ap-
pellee could use as a set-off the amount he had paid
the bank for Williams & Stevenson on said joint obli-
gation, which would have disabled Williams & Steven-
son to that extent to meet the demands of their other
creditors. Instead, the voluntary assignees of Williams
& Stevenson, rather the receiver, bring suit on these
notes; so, to say that the creditors of Williams & Ste-
venson, by the voluntary assignment, can compel appel-
lee to pay said notes in full, and then receive only a
pro rata of the debt which he was compelled to pay for
Williams & Stevenson, would be to put appellee in a
worse position, and the other creditors in a better posi-
tion, by the failure of Williams & Stevenson and the
appointment of assignees.

It occurs to us, therefore, as appellee's claim was
founded on a transaction with Williams & Steven-

son, which occurred prior to their assignment for the benefit of creditors, and at the moment that transaction was entered into, there sprang up an implied promise, on the part of each to each, to pay to the other whatever sum he might have to pay, over and above his part, that the sum paid by appellee was an available set-off, not only as against the notes given to Williams & Stevenson by appellee, had they brought suit on them in place of appellant, but as against the voluntary assignees of Williams & Stevenson, or their receiver, the appellant.

The affirmative allegations in appellant's reply are not such as, under the Civil Code, require a denial by rejoinder.

The judgment of the lower court is affirmed.

Judge HOLT not sitting.