# CHARLESTON.

JOHNSON'S EX'ORS. v. JOHNSON'S HEIRS *et al.*

Submitted March 4, 1919.  Decided March 11, 1919.

1. SET-OFF AND COUNTERCLAIM—*Indebtedness Against Insolvent Estate—Suretyship for Deceased.*

   A debtor of an insolvent estate may, in a court of equity, set off his liability as surety for the deceased, and is entitled to withhold payment of his debt until the amount of such liability is determined.  (p. 597).

2. EXECUTORS AND ADMINISTRATORS—*Trusts—Mingling Trust Funds —Insolvency of Trustee—Distribution.*

   One, receiving money from another to be invested for the latter's benefit, who mingles it with his own funds and lends the whole to a third person ignorant of the trust, taking his note therefor payable to himself, thereby becomes a trustee for the person advancing the fund to the extent of the latter's interest, whose equity therein is superior to the rights of general creditors of such trustee; and, in case the trustee dies leaving an insolvent estate, is entitled to prorate, on the full amount of his claim, in the distribution of the assets with other general creditors, provided the trust fund and such *pro rata* distribution, together, do not result in over-payment of his claim.  (p. 597).

3. TRUST—*Loan of Trust Fund—Rights of Borrower.*

   The equitable right of the borrower of such funds to set off his liability as surety for the trustee, is superior to the equity of the *cestui qui trust* in the fund.  (p. 597).

4. EXECUTORS AND ADMINISTRATORS—*Insolvency—Claim Against Estate of Deceased Trustee—Statute.*

   Trust funds, which a deceased trustee has mingled with his own and consumed or dissipated in his lifetime, are not a preferred claim against his insolvent estate.  Clause 3, Sec. 25, Ch. 85, Barnes' Code, does not embrace such claims; they fall in class four with general demands.  (p. 599).

Appeal from Circuit Court, Greenbrier County.

Suit by A. E. Johnson's Executors against A. E. Johnson's Heirs, and others, to judicially determine testator's debts with petition in the cause by May Irons and answer to petition in nature of a cross-bill by W. E. McClung and wife. Decree for May Irons against W. E. McClung, and dissolv-

ing an injunction awarded in vacation restraining the trustee's sale, and McClung and wife appeal.

*Reversed in part. Affirmed in part. Remanded.*

*Thos. N. Read,* for appellants.
*S. N. Pace* and *Jno. L. Rowan,* for appellee.

WILLIAMS, JUDGE:

This appeal by W. E. McClung and Relda McClung, his wife, from a decree made on the 14th of September, 1917, in the suit of A. E. Johnson's Executors against A. E. Johnson's Heirs and others for the purpose of having the testator's debts judicially determined and the lands devised by him sold to pay the same, presents the following questions, viz.:

(1) Can a debtor of an insolvent estate set off a debt owing by the estate for which he is liable as surety?

(2) Where the deceased, in his lifetime, accepted money from another to be invested for the latter's benefit and lent it to a third person, taking his note therefor payable to himself, which, after his death is listed and appraised as an asset of his estate, is the person advancing the money entitled to the proceeds of such note as against the general creditors of the estate?

(3) The borrower of such fund being also surety for the deceased on a note made in his lifetime, and ignorant of the trust, is his right of equitable set-off superior to the right of the *cestui qui trust?*

All these questions must be answered in the affirmative. In order to understand their relevancy it is necessary to state the facts to which the principles are applicable. Miss May Irons, a niece of A. E. Johnson, deceased, mailed to him her unfilled check, about the 1st of April, 1913, and on the 2nd of April he wrote her as follows:

"Your letter with Check received—I filled it for $1000.00. I am going to let McClung have about $1500.00 and will take Trust deed for $2500.00 and will let you hold note when I get it and will send you Check for Commission along with Note. This will be your receipt for Check until the matter is adjusted."

The Mr. McClung mentioned in the letter is W. E. Mc
Clung, the appellant.    Mr. Johnson did not, apparently,
lend Mr. McClung as much money as he stated in his letter
he intended to lend him, but did lend him $2,000, $1,000 of
which was Miss Irons' money, and took McClung's note for
$2,000, payable to himself and also a trust deed from Mc-
Clung and wife on McClung's farm of 100 acres to secure
it; and on the 6th of June, 1913, again wrote Miss Irons as
follows:

"I received your letter some days ago, I have Mr. Mc-
Clung's Note for $2000.00 two thousand dollars secured by
Deed of Trust and the trust deed recorded, one half of the
note is yours and one half is mine.    There is still in my
hands something over $100.00 belonging to Mr. McClung.    I
have waited for him to call for it but he does not seem to
need it badly.    The Note is in the Farmers Bank of Union
and I will arrange it to suit you.    Either give you my note
for $1000.00 and let you hold the McClung note as collateral
or fix you a paper and pin it to the note to show that ½ of
it is yours."

Mr. McClung was surety for said Johnson on a note for
$2,000.00 payable to Jesse F. Bright.    But whether he became
surety before or after he borrowed the $2,000 from Johnson
does not appear, nor do we think the time is material.    On
the face of the note to Bright, McClung appears to be maker
and Johnson endorser, but McClung proved by competent
witnesses that Johnson was the principal debtor and that he
was accommodation maker, and his suretyship is not now
questioned.    It is admitted that McClung's note should be
credited with the following partial payments made to John-
son in his lifetime, viz.: $1,200 as of April 1, 1914, and $50
as of April 5, 1915.    There is no evidence that McClung ever
knew Miss Irons had furnished part of the money he borrowed
from Johnson, until after the latter's death.

A. E. Johnson died testate, and by his will disposed of a
considerable amount of property, real and personal, and his
estate is insolvent.    His executors brought this suit to settle
his estate, and the cause was referred to a commissioner for
the purpose of convening the creditors, taking an account of

the assets and liabilities of the estate and reporting thereon
to the court. The commissioner reported Miss Irons' claim
as a debt of the general class against the estate, and she ex-
cepted to the report, and also filed her petition in the cause,
setting up a trust in the debt due from McClung, based on
the facts above stated. The executors waived process and
appeared to the petition, and the court sustained Miss Irons'
exception to the commissioner's report, and held her to be
an equal owner with Johnson's estate in the fund loaned to
McClung, and decreed that the executors execute to her a
writing acknowledging her right to $1,000 in said McClung
debt, with interest thereon from April 1, 1913, and also au-
thorized her to have the McClung trust deed foreclosed for
the collection thereof. This decree was entered December 23,
1916, before McClung had appeared to the petition. He was
not made a party to it nor served with process thereon, and,
of course, the decree as to him was void. The trustee had
advertised his property for sale, under the deed of trust.
He then presented to the judge, in vacation, his answer to
said petition, which answer is also in the nature of a cross-
bill, denying the allegations of the petition, averred payment
of the note and prayed for an injunction to restrain the
trustee from selling, and also claimed the right to set off the
debt due from Johnson's estate to Jesse F. Bright, on which
he was surety, against the debt he owed the estate. Mrs.
Relda McClung, wife of W. E. McClung, having acquired title
to the land since the execution of the trust deed, is also made
a party to the cross-bill answer. On the hearing of the issues
thus presented, the court, on the 14th of September, 1917,
decreed that there was $1,061.54 of the McClung note un-
paid and gave Miss Irons a decree therefor against W. E.
McClung, with interest from that date, and decreed it to be
a lien upon 80 acres of the 100 acre tract of land covered by
the deed of trust. It appeared that McClung had previously
sold and conveyed 20 acres thereof and applied the proceeds,
to-wit, $1,200, derived therefrom on his debt to Johnson, the
latter then releasing his trust lien to that extent. The court
also dissolved the injunction previously awarded in vacation

restraining the trustee's sale. From that decree McClung and wife have taken this appeal.

That Miss Irons was the equitable owner of one-half the McClung debt is fully established by Mr. Johnson's letters to her above-quoted; and that she has a right to her portion of the fund, provided so much remains unpaid, as against the general creditors of Johnson's estate, is well settled by our decisions. *Hogg* v. *McGuffin,* 72 W. Va. 86. Her situation is similar to that of a principal who furnishes money to an agent with which to buy land for him, and the agent invests it in land and takes title to himself. There a constructive trust arises in favor of the principal. The same rule is applicable here, and, while Johnson appears on the face of the note to be the owner of the whole of the fund, he was in fact absolute owner of one-half only and trustee for Miss Irons for the other half, which gives her an equity in the particular fund, which is superior to the claims of general creditors.

Not having paid the debt to Bright on which he is surety, McClung would not be entitled to set it off against his debt to the estate, in an action at law, it is still his mere liability. *Minor* v. *Minor's Admr.,* 8 Grat. 1; *Mercein* v. *Smith, Admr.,* 2 Hill, (N. Y.), 210; and *Granger's Admr.* v. *Granger,* 6 Ohio 35. The right of set-off in actions at law was not recognized by the common law, and it is only by virtue of statutes that the right exists in actions in courts of law. But a different rule has always obtained in equity. The doctrine is derived from the civil law, and is generally applicable whenever the party seeking its benefit can show some equitable ground entitling him to protection against the demand of his adversary. 3 Story's Eq. Jur., (14th ed.), Sec. 1872.

The insolvency of Johnson's estate, in this instance, supplies the necessary equitable grounds, entitling McClung, who is only surety for the estate, to protection, so far as he can be protected, against the debt due to Mr. Bright. The amount McClung may have to pay Bright on account of his suretyship is not known, as the record does not disclose what per centum of its indebtedness the estate will be able to pay; and McClung has a right to stay collection of his note until

that matter is ascertained. He is liable to Bright only for the unpaid portion of Bright's debt, after he has received his *pro rata* share of the proceeds from the assets of the estate. This principle is established by numerous well considered cases. *Feazle* v. *Dillard,* 5 Leigh 30; *Beard* v. *Beard,* 25 W. Va. 486; *Scott* v. *Timberlake,* 83 N. C. 382; *Tuscumbia etc. R. R. Co.* v. *Rhodes,* 8 Ala. 206; *Coffin* v. *McLean,* 80 N. Y. 560; *Smith* v. *Felton,* 43 N. Y. 419; *Lindsay* v. *Jackson,* 2 Paige 581; *Beaver* v. *Beaver,* 23 Pa. St. 167; *Becker* v. *Northway,* 44 Minn. 61; and *Merwin* v. *Austin,* (Conn.), 18 Atl. 1029.

*Washington* v. *Castleman,* 31 W. Va. 832, in which the court denied a creditor of an insolvent estate the right of set-off, is distinguishable from the cases above cited. There it appears that the decedent had, in his lifetime, leased his farm to his son for a term of five years, reserving rent payable annually in a certain portion of the crops. The decedent owed the lessee at the time of his death, which amount the lessee sought to set off against the rents accruing subsequently, and was not permitted to do so, apparently on the ground that rents, accruing subsequently to the death of the lessor, passed with the land to the heirs, and was, therefore, not a debt due to the estate. Moreover, in that case the rents had been sequestered by the appointment of a receiver who had collected them.

It is a condition of the right of equitable set-off against an insolvent debtor's estate, that the liability must have existed at the time of decedent's death, and that is the case here. As between McClung and Johnson, the latter acted for himself and an undisclosed principal, and took McClung's note payable to himself. Hence, payment to Johnson without knowledge of the secret trust in favor of Miss Irons would have discharged the debt. McClung did in fact pay a little more than half of it, which Miss Irons' counsel admits. We perceive no reason why his right of equitable set-off is not of equal dignity with payments made to Johnson, the liability to be set off having been contracted before he learned of Miss Irons' latent equity, and we think this rule furnishes a correct solution of the controversy. McClung's situation is anal-

ogous to that of a person dealing with a factor selling goods for an undisclosed principal. In such cases it is held that, in a suit by the undisclosed principal for the price, the purchaser may set off against his demand a debt due him from the factor. *Hogan* v. *Shorb*, 24 Wend. 458; *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159; Waterman on Set-offs, (2nd ed.), Sec. 291. Lord Mansfield, in *Rabone, Jun.* v. *Williams*, cited in a note to *George* v. *Clagett*, 7 Term Rep. 361, says: "Where a factor, dealing for a principal but concealing that principal, delivers goods in his own name, the person contracting with him has a right to consider him to all intents and purposes as the principal; and though the real principal may appear and bring an action upon that contract against the purchaser of the goods, yet that purchaser may set off any claim he may have against the factor in answer to the demand of the principal. This has been long settled."

Miss Irons has a right also to participate in the funds belonging to Johnson's estate as a general creditor only. Johnson having taken the note for the whole sum of money lent to McClung in his own name, one-half of which was hers, he thereby became her trustee, and she has a right to participate in the distribution of the assets among the general creditors, on the whole amount of her trust debt, without abandoning her right to pursue the particular fund in McClung's hands, and thereby obtain whatever portion of the fund, if any, that remains in his hands after the set-off has been applied in his favor, provided such sum is not more than sufficient to pay her claim. *Williams et al* v. *Overholt*, 46 W. Va. 339; and cases cited at page 340. But her claim against the estate is in no sense a preferred one. While it is true her debt is a trust obligation upon the estate, it is not favored any more than general unsecured debts. Sec. 25, Ch. 85, Barnes' Code, providing for the administration of an insolvent estate, does not prefer debts owing by the deceased in the capacity of trustee. Such debts are not embraced in the terms of clause three of said statute. *Price's Ex'ors.* v. *Harrison's Exors.*, 31 Grat. 114; and *Brown* v. *Lambert's Admr.*, 33 Grat. 256. The statute in Virginia has been amended since 1860, so as to include among preferred claims of the

third class, debts owing by a trustee, and this has been construed by the Virginia court to mean trustees created by an express trust. But our statute is practically the same as the Virginia statute was in 1860.

So much of the decree appealed from as dissolved the injunction and denied appellant W. E. McClung the right to set off his liability to Bright against the balance due on his note to the estate of A. E. Johnson, deceased, and decreed Miss Irons a recovery against McClung for $1,061.54 will be reversed, and in other respects it will be affirmed, with costs to appellant, and the cause remanded for further proceedings therein according to the principles herein announced, and further according to the rules and principles governing courts of equity.

*Reversed in part. Affirmed in part. Remanded.*