[No. 3264. Aug. 28, 1928.]

STATE v. BANK OF MAGDALENA.

Claim of MACTAVISH.

[270 Pac. 881.]

James G. Fitch, of Socorro, for appellant.

Nicholas & Bunton, of Magdalena, for appellee.

OPINION OF THE COURT

WATSON, J.  Appellee is the receiver of the insolvent Bank of Magdalena, appointed under the provisions of Laws 1919, c. 120, § 32.  Appellant being a debtor of the bank, made claim to a set-off, which the district court denied.

When the bank suspended payment, appellant was indebted to it on past-due notes aggregating some $4,800. Socorro county had on deposit in the bank some $10,000. The deposit was secured by a bond given by the United States Fidelity & Indemnity Company.  This surety held indemnity in the form of a bond, given by four of the directors of the bank, of whom appellant was one.  The indemnitors were bound by an agreement among themselves that their liability should be proportionate to their stock holdings.  Pursuant to these obligations, the indemnitors, after the bank's suspension, paid the county deposit in full; appellant's contribution thereto being nearly $7,500.

It is recited in the judgment:

"That the only question presented to the court is one of law, namely, as to whether a surety, who has satisfied the liability of the defendant insolvent bank upon a deposit account of public funds and has become subrogated to the rights of a depositor, can set off his claim thereunder against his liability on promissory notes to the said insolvent bank."

The same question is presented here.  The fact that appellant was not himself the surety, but an indemnitor of

the surety, received no consideration in the trial court. Appellant says it makes no difference, and that he stands in the same position as an original surety. He cites 37 Cyc. 434. Appellee acquiesces. We therefore assume the correctness of the proposition.

Numerous authorities on the question stated are found collected in the case note entitled "Set-Off by Surety of Claim Paid for Insolvent Principal Whose Assets are Being Administered for the Benefit of Creditors, against Own Indebtedness to Principal," 40 A. L. R. 1096. There is a sharp conflict of judicial opinion. The annotator does not venture to express a view as to the merits of the question, nor as to the weight of authority. Michie lays it down that equity will allow such set-off. 2 Banks and Banking, § 135 (6), p. 1073. But he cites two New York cases only.

The authorities are unanimous in sustaining the equity to a set-off of a claim acquired prior to the insolvency, and equally so in denying it upon a claim subsequently acquired. In the first case the asset which vests in the receiver is merely the balance owed to the insolvent. In the latter case, the debt, having passed to the receiver free from equities, cannot be reduced by a counter debt subsequently acquired. To allow a set-off in that case would be to the prejudice of an equity enjoyed by the creditors in general to equality of distribution. It would create a preference. The question upon which the courts have divided is this: Should equity regard the surety, who has entered into his engagement before insolvency, and whose liability has become fixed by the insolvency, but who has not actually satisfied the liability and become subrogated until after insolvency, as having acquired his counter debt after insolvency? Among the decisions holding that he should not be so regarded are Kilby v. First National Bank, 32 Misc. Rep. 370, 66 N. Y. S. 579; Chenault v. Bush, 84 Ky. 528, 2 S. W. 160; Nolan Lumber Co. v. Dudley Lumber Co., 128 Tenn. 11, 156 S. W. 465, 46 L. R. A. (N. S.) 62; Ann. Cas. 1914D, 744; Barney v. Grover, 28 Vt. 391; Cosgrove v. McKasy, 65 Minn. 426, 68 N. W. 76; North Side Bank v. U. S. F. & G. Co., 127

Wash. 342, 220 P. 822; Momsen v. Noyes, 105 Wis. 565, 81 N. W. 860.

The theory of these decisions, speaking generally, is that the liability of the surety is fixed at the moment of suspension of payments, and is upon a contract previously made. The surety from that moment is the insolvent's debtor, subject only to the fulfilling of his obligation to satisfy the depositor, which, in the nature of things, requires some time. The obligation to reimburse the surety arises immediately upon refusal by the bank, by its suspension of payments, to pay the deposit. There is but one difficulty in this theory. The liability to reimburse, though fixed, is not enforceable in any ordinary action, until the surety has himself made payment. To meet this, the doctrine of relation is invoked. The payment, when made, is given relation to the time of entering into the suretyship engagement, or at least to the time of insolvency.

Among the decisions to the contrary are the following: Mack v. Woodruff, 87 Ill. 570; Richardson v. Anderson, 109 Md. 641, 72 A. 485, 25 L. R. A. (N. S.) 393, 130 Am. St. Rep. 543; Storts v. George, 150 Mo. 1, 51 S. W. 489; U. S. F. & G. Co. v. Maxwell, 152 Ark. 64, 237 S. W. 708; U. S. F. & G. Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094; Hammons v. U. S. F. & G. Co., 30 Ariz. 480, 248 P. 1086; Gilbertson v. Northern Trust Co., 53 N. D. 502, 207 N. W. 42, 42 A. L. R. 1553. The three last mentioned take the view that the doctrine of relation will not be invoked to do injustice.

The doctrine of relation, in cases such as this, is favorable to a set-off. It is unfavorable to the equity of equality among creditors. Whether it promotes justice or injustice would seem to depend upon which equity is superior. It strikes us that the equity of set-off must be deemed superior. All authorities admit it in a proper case, always to the prejudice of the equity of equality. One may not, after his debtor has become insolvent, improve his situation to the disadvantage of other creditors by acquiring counter debts. The inequity of that is plain. But in the present case there was no acquiring of a coun-

ter debt after the insolvency.. The debt sought to be used as a set-off was already fixed upon appellant by his previous contracts and by the fact of insolvency. By no act of his has he improved his situation. If his claim should not be allowed, he must pay his debt in full, and rest satisfied with only a part of what is owed to him. Thus his treatment would be quite different from that of another creditor, whose equities differed only in an unsubstantial and theoretical way: This view would seem to support the rule laid down by the authorities first cited.

Whether the decisions could be to any extent harmonized by consideration of statutory differences is a question we do not pursue. Certainly the provisions of the National Banking Act (Rev. St. §§ 5236, 5242 [12 USCA §§ 91, 194]) as to distribution and against preferences are different from our own statutes governing the same matters. We pass to a consideration of the latter.

The Banking Code of this state (Laws 1915, c. 67, as amended) makes no special provisions as to preferences or set-offs in case of insolvency. These matters are governed by the provisions of the general incorporation laws for the winding up of insolvent corporations. Laws 1919, c. 120, § 32. State v. People's State Bank & Trust Co., 23 N. M. 282, 168 P. 526. ·Those provisions recognize the principle of ratable distribution among creditors, and by inference discountenance preferences. Code 1915, §§ 949, 976. Specifying the power and authority of the receiver, set-off is provided for in this language:

"* * * In .case of mutual dealings between the corporation and any person to allow just offsets in favor of such person in all cases in which the same ought to be allowed according to law and equity." Code 1915, § 957.

Our general incorporation laws were taken from New Jersey. State v. First State Bank of Las Cruces, 22 N. M. 661, 167 P. 3, L. R. A. 1918A, 394. The language above quoted has been many times construed by the courts of that state. It is not directory only. It makes set-off a matter of legal right. Receivers v. Paterson Gaslight Co., 23 N. J. Law, 283. The words of the act as

above quoted are "peculiar and liberal." State Bank v. Receivers of Bank of New Brunswick, 3 N. J. Eq. 266.

Among the three opinions in Receivers v. Paterson Gas-light Co., supra (all apparently concurring in view and in the result), are numerous interesting observations as to what are "mutual dealings," as to the liberality to be used in construing the set-off provision, and as to the merits of that equity as compared with the equity of equal distribution. The Chief Justice said:

> "It is said that the object of the act is to do *equal justice* to all the creditors, and that *equality* is *equity*. But equality of what, and among whom? Clearly, of the *assets* of the bank among the *creditors* of the bank. In cases of cross-indebtedness, the assets of the bank consist only of the *balance* of the accounts. That is all the fund which the bank itself would have had to satisfy its creditors, in case no receiver had been appointed. And there is no *equality* and no *equity* in putting a debtor of the bank, who has a just and legal set-off as against the corporation, in a worse position, and the creditors in a better position, by the failure of the bank and the appointment of receivers."

Mr. Justice Elmer said:

> "Whether it would have been doing better justice to the community to require every debtor of the bank to pay his debt to the receivers in full, and to receive of them a dividend for any counterclaim he might have against an insolvent institution, we are not at liberty to inquire. Such are not the provisions of the act. In cases of mutual dealing between the bank and its debtor, the receivers are explicitly empowered to allow all just set-offs, so that the only question open to us is, has there been such mutual dealing as the act contemplates or not?"

The New Jersey statute has been frequently held to be essentially a bankrupt act, and to be construed as such. Butler v. Commonwealth Tobacco Co., 74 N. J. Eq. 423, 70 A. 319. Code 1915, § 976, provides:

> "And the creditors shall be entitled to distribution on debts not due, making in such case a rebate of interest, when interest is not accruing on the same."

Thus is expressed, in statutory form, "the uniform current of authority * * * that * * * unmatured claims are provable against the bankrupt's estate. * * *" Being provable, they are necessarily the subject of set-off under section 68 of the National Bankruptcy Act (11 USCA § 108) and under Code 1915, § 957. Shields v. John Shields Construction Co., 83 N. J. Eq. 21, 89 A. 1022. This rule

meets one of the more serious objections to the allowance of·set-off as here claimed.

While we have found no New Jersey case deciding the exact question now before us, the principles established in that jurisdiction seem to point the way. In our statute, as interpreted in New Jersey, the principle of set-off is given high recognition. If set-off "ought to be allowed according to law and equity," the only requirement is mutuality of dealing. There need be no mutuality of indebtedness. The right is not dependent upon the general statute of set-off at law, or upon the generally accepted equitable doctrine. It is created by this statute governing the application of the assets of insolvent corporations. The principle of equality among creditors is subordinate. Therefore a mere technical objection is not sufficient to defeat a claim of set-off which is founded in right and honesty. When the doctrine of relation is resorted to in aid of a claim of set-off, it is not, under the policy of our statute, invoked to accomplish an injustice.

So we conclude that the judgment should be reversed, and the cause remanded, with direction to allow appellant's claim; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.