William L. O'Connell, Appellant, v. Samuel T. Nelson et al., Appellees.

Gen. No. 8,930.

Dove, J., dissenting.

Opinion filed July 30, 1935.

VIRGIL H. DUVALL, of Aledo, for appellant.

HARRY M. SCHRIVER, of Rock Island, and SAMUEL R. KENWORTHY, of Moline, for appellees.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On February 28, 1934, William L. O'Connell, as receiver of the Aledo State Bank, filed a complaint in chancery, in aid of execution, in the circuit court of Mercer county, Illinois, against Samuel T. Nelson et al. In this complaint is was alleged that said receiver had previously recovered a judgment against said Samuel T. Nelson, in the circuit court of Mercer county, Illinois, on November 24, 1933, to the amount of $8,322.64 and costs; that previous to the rendition of said judgment said Nelson had conveyed a large amount of real estate and personal property to the defendants; that said conveyance was not bona fide, but was a sham and

made for the purpose of defrauding plaintiff and was not supported by any valuable consideration; that the notes on which said judgment was based had been executed by said Samuel T. Nelson prior to the time the Aledo State Bank closed for business on December 21, 1931, and that plaintiff, William L. O'Connell, was the duly qualified and acting receiver of said bank.

It was further alleged that said Samuel T. Nelson had no property, real or personal, liable to levy and sale excepting that which had been conveyed to the defendants, and the complaint prayed that the deed of conveyance be set aside and that the defendants be enjoined from selling or in any manner interfering with the said real and personal property. All defendants were duly served with summons.

Defendant, Samuel T. Nelson, filed an answer and counterclaim in which the entry of the judgment against him as stated above for $8,322.64 and costs was admitted. He also stated that previous to the rendition of said judgment he owned the real estate mentioned in the complaint, and that he, together with his wife, Amanda J. Nelson, conveyed the same as alleged. The allegations that the conveyance was a sham and fraud were denied. This defendant made further denial that there was anything due from him to plaintiff because of said judgment, but claimed a set-off thereto because of the facts set up in his counterclaim, and denied that plaintiff was entitled to any relief.

The counterclaim of said Samuel T. Nelson states that said receiver was indebted to him to the sum of $8,504.34, with interest from January 26, 1934, for money laid out and expended by said defendant, Nelson, for the Aledo State Bank, at its request, under the following circumstances: On January 17, 1929, the United States District Court for the Southern District of Illinois, Northern Division, appointed the Aledo State Bank a depository for funds of estates in bankruptcy, and on January 21, 1929, the Aledo State Bank,

as principal, and S. T. Nelson (who is the same person as defendant, Samuel T. Nelson) and others, as sureties, entered into a bond in the penal sum of $50,000, payable to the United States of America, to protect deposits of bankruptcy funds in said bank, which bond was approved by said court January 22, 1929; that moneys belonging to a large number of estates in bankruptcy were deposited in said bank and withdrawn therefrom from time to time until January 26, 1932, when said bank was declared insolvent by the auditor of public accounts and a receiver appointed. The deposits of bankruptcy funds in said bank when it closed aggregated $8,364.85.

Suit was brought on this bond in the United States District Court January 9, 1933, and a judgment entered against said Nelson (a surety on said bond), for $8,506.34, on May 11, 1933. Samuel T. Nelson paid and discharged said judgment on January 26, 1934, and thereby discharged the obligation of the Aledo State Bank on said bond. Samuel T. Nelson charges that said sum of $8,506.34 was due him from the Aledo State Bank, and that said amount was due to him from said bank when it closed its doors and suspended payment December 21, 1931. The counterclaim prayed judgment against plaintiff for $8,506.34, with interest from January 26, 1934, and asked to have $8,322.64 credited for the discharge of the judgment which the receiver of said bank held against him. It was further asked that said judgment be canceled and that a judgment for the excess be rendered in favor of said defendant and against plaintiff.

The defendants, Amanda J. Nelson et al., being all defendants except Samuel T. Nelson, Jr. (the minor), answered. Their allegations were substantially the same as set forth in the answer and counterclaim of Samuel T. Nelson. Samuel T. Nelson died May 19, 1934, and Virgil A. Nelson, as administrator of his estate, was substituted as a defendant and also as coun-

terclaimant. A guardian *ad litem* was appointed for defendant Samuel T. Nelson, Jr., and he filed a formal answer.

Plaintiff filed a motion directed to the answer and counterclaim of all the defendants. This motion, which operated as a demurrer under the Civil Practice Act, Cahill's St. ch. 110, ¶ 129 *et seq.,* raised several questions, some of which pertained to form chiefly and which were obviated by amendment. The principal question raised by the motion was that because Samuel T. Nelson had paid the judgment entered in the United States District Court against him, on the bond in which he was a surety for Aledo State Bank, subsequent to the closing of Aledo State Bank and subsequent to the principal's insolvency, he was not entitled to set off the amount which he paid, against the judgment which the receiver of the Aledo State Bank had obtained against him.

After a hearing on the questions raised by the pleadings, no evidence being taken, the court entered a final decree on November 9, 1934, denying and overruling the motions to strike the answers and counterclaims. Appellant refused to plead further and the court found that appellant, as receiver of the Aledo State Bank, was justly indebted to Virgil A. Nelson, as administrator of the estate of Samuel T. Nelson, deceased, to the amount of $8,506.34; and that Samuel T. Nelson was justly indebted to Aledo State Bank at the time of the institution of this suit to the sum of $8,322.64, and that defendant, Virgil A. Nelson, administrator of the estate of Samuel T. Nelson, is entitled to set off the indebtedness owed by plaintiff to Samuel T. Nelson and that the sum of $8,322.64 be credited to plaintiff in satisfaction of the amount due from Samuel T. Nelson to plaintiff; that plaintiff should be ordered to satisfy his judgment against defendant as described in the complaint which was entered November 24, 1933, in favor of William L. O'Connell, as receiver of Aledo

State Bank, and against Samuel T. Nelson, named as
S. T. Nelson, and further found that Virgil A. Nelson,
as administrator of the estate of Samuel T. Nelson,
deceased, have and recover from plaintiff the balance,
being $183.70, to be paid by plaintiff out of the assets
of Aledo State Bank in due course of administration
of said assets. An order was entered in conformity to
the above findings. Plaintiff was enjoined from as-
serting any rights against any of the defendants by
reason of said judgment. The complaint of the plain-
tiff was dismissed and costs assessed against him, to
all of which plaintiff excepted. The appeal from said
final decree was then perfected to this court.

The facts are not in dispute in this case. The only
question before this court for decision is one of law
raised solely on the pleadings. This question is con-
ceded to be, ''Can a debtor to a bank, on an obligation
incurred prior to the bank's insolvency, set off against
this obligation, reduced to judgment by the receiver
of said bank after its insolvency, a claim of said debtor
against a receiver arising out of the fact that the
debtor paid a judgment entered against him after the
bank's insolvency based on a depository bond executed
by said bank as principal and said debtor claiming a
right of set off, as one of the sureties; said bond being
executed prior to the bank's insolvency?''

The plaintiff obtained a judgment at law by con-
fession against Samuel T. Nelson. In his petition he
avers he is unable to collect by means of an execution
and he brought that judgment into a court of equity
by a creditor's bill to obtain equitable relief, by set-
ting aside a conveyance made by Samuel T. Nelson
prior to judgment in question, on the alleged ground
that the conveyance was fraudulent as to the plaintiff.
Under these circumstances it is a question of law
whether equity principles shall prevail, and if so
whether the defendant is entitled to the set-off as
claimed. In the case of *Quick v. Lemon*, 105 Ill. 578,

the question was raised whether the case should be decided according to equitable principles or to the strict interpretation of the law. The court in their opinions say, "The case then stands in this position: The complainant has recovered a judgment at law against defendant, which he carries into a court of equity to enforce. The defendant has a demand against complainant which grew out of the same transaction, which has not been reduced to judgment, and which was not pleaded in the action at law wherein complainant obtained judgment. Can this demand be set off in equity when the plaintiff in the judgment comes into a court of equity to collect his judgment? If the judgment had been paid after it was rendered, the defendant might defeat the bill by showing that fact. If it has a legal demand against complainant large enough to liquidate the judgment, although it existed when the judgment was rendered, as it was not bound in law to plead that demand in the action at law, when sued in equity we perceive no reason why the demand may not be relied upon as a set-off to the judgment, if the corporation can show equitable ground for relief." It appears to this court that there is no question but that since the appellant chose a court of equity in which to enforce his claim, the whole proceeding should be governed by equitable principles.

The appellee cites the case of *Hynes v. Illinois Trust & Savings Bank,* 226 Ill. 95, in which it has said: "The rights and liabilities of creditors and debtors of an insolvent corporation are fixed and determined at the time of the appointment of the receiver." This case is cited for the purpose of showing that before the receiver was appointed in the present case the appellee had a matured claim against the bank for the amount that was found due on the bond in question, and therefore became a creditor of the bank prior to the appointment of the receiver. It is questionable whether the language used by the Supreme Court is applicable

to the case we are now considering, but for reasons which will be discussed later, we think it is of little importance whether this ruling is applicable.

Neither our Supreme or Appellate Court has passed upon the principle of law we are now considering, but the Supreme Courts of many of the other States have passed upon it and are in hopeless conflict in regard to it. In the case of *Kilby v. First Nat. Bank,* 66 N. Y. S. 579, at 583, the court in passing upon the identical question that we now have before us, use this language: "But it is urged that, although plaintiff made the payments on account of these three deposits before the defendant receiver was appointed, still it was after the bank had suspended, and that therefore they are not available to him, as against what he owed at the date when the bank suspended. *Davis v. Knipp,* 92 Hun, 297, 36 N. Y. Supp. 705. The case presented in and covered by that decision is different from this one. There the debtor owing the bank went onto the street after its suspension, and bought up a claim to which he had held no previous relation, for the express purpose of using it as an offset. To allow such a procedure would manifestly be unjust to other creditors, and should not be tolerated. But that is not this case. If I have been right in my prior conclusions, the defendant bank, at the moment when it suspended, owed three accounts, which in this action are to be deemed then due and payable. It was insolvent and could not pay them, and plaintiff, by express agreement and otherwise, was individually liable to make good every dollar of every deposit. He had a right to treat his responsibility as then accrued and fixed, and could have pursued the bank for the total amount of all the deposits. As a matter of fact, some time was taken to adjust his liability with the parties to whom he was bound to make good the deposits, and to fix and liquidate his individual responsibility in the case of two of them. This, however, was all done in pursuance

to and in recognition of a liability which existed at the date of suspension; and for the purposes of this action the payments will be deemed to relate back, and to have been made as of that date. So that, in conclusion, we have plaintiff, as of the date when the bank suspended, becoming liable for the amount of three deposits which he was bound to make good when the bank defaulted, and in liquidation of that liability paying the sum of $3,785.55, which he asks to have offset on what the bank or its receiver holds against him. It seems to me that he is entitled to this relief; that whether it be regarded that as a surety for the bank he has paid up in part these deposits, and become subrogated to the rights and claims of those to whom they belonged, or simply that by the failure and default of the bank he became liable for a certain amount, which he has liquidated and paid, in either event equity will give him credit upon his indebtedness for his payment thus made.''

In the case of *City of Rice Lake v. Citizens' State Bank of Rice Lake*, 204 Wis. 228, the Supreme Court of the State of Wisconsin in holding that a surety for the bank which had been compelled to pay because of the insolvency of the bank, use this language: ''It is objected by appellants that to permit the set-off operates unfairly to the depositors of the bank, in that its effect is to insure to the depositor who has insisted on such a bond a return of his deposits, not at the expense of the sureties, but at the expense of the depositors; that this is true because the sureties on such a bond may borrow money sufficient to recover their liability and thus provide themselves with an offset. That there is something to be said for this position may easily be conceded. It is the basis of the cases denying a set-off in such a situation. However, it has always been the rule that a surety could exact security from his principal, and that is virtually what has been done in this case. Nor does there seem to be any fundamental dis-

tinction between the surety situated as are the defendants, and the depositor who borrows and thereby protects his deposit, yet the right of the borrowing depositor to off-set is unquestioned. It is further to be considered that section 62.12 (7), Stats., contemplates that depository bonds be exacted to secure the deposit of municipal funds. It is by no means clear that sureties on such bonds could be obtained without a contract reserving some such security as was here exacted. It is our conclusion that the defendants, except Hansen, are entitled, upon payment of the judgment in favor of the city, to an offset against their indebtedness to the extent of such payments.''

In the case of *Leach v. Bassman,* 208 Iowa 1374, 227 N. W. 339, the same question was before the Supreme Court of Iowa, and in deciding the case the court use this language: ''It is also conceded that, if the claim of appellee to a set-off rests wholly upon the equitable doctrine of subrogation, no such right exists. Appellee concedes that the holding of this court in *Leach v. Commercial Savings Bank,* 205 Iowa 1154, 213 N. W. 517, is conclusive on this point. Appellant, however, argues that the decision in that case goes much further than appellee is willing to admit. The proposition relied upon by appellee for affirmance is that the relation of creditor and debtor arose between himself as surety on the bond and the bank as principal immediately upon its execution; that the law implies an obligation on the part of the principal to pay the debt or to reimburse the surety if he is compelled to do so. The right of a creditor of an insolvent bank to set-off is limited to a pre-existing indebtedness; that is, the insolvent must have been indebted to the person claiming a right of set-off at the time the insolvency occurred. This is well settled in this state.

''There is some diversity of judicial opinion as to whether the relationship of creditor and debtor arises between principal and surety immediately upon the

execution of the instrument. . . . The exact question before us has not previously been passed upon by this court, but it seems to us in harmony with the overwhelming weight of authority that the relation of creditor and debtor arises immediately upon the signing by the surety of the obligation because of the implied promise of the principal to reimburse him in case he is compelled to pay the same.

"As was said by the Massachusetts court in *Rice v. Southgate*, 16 Gray, 142:

" 'It is clear that the contract of a principal with his surety to indemnify him for any payment which the latter may make to the creditor in consequence of the liability assumed takes effect from the time when the surety becomes responsible for the debt of the principal. It is then that the law raises the implied contract or promise of indemnity. No new contract is made when the money is paid by the surety, but the payment relates back to the time when the contract was entered into by which the liability to pay was incurred. The payment only fixes the amount of damages for which the principal is liable under his original agreement to indemnify the surety.' " In this case the court cites many other cases that support the ruling as laid down by that court.

In the case of *State v. Bank of Magdalena*, 33 N. M. 473, 270 Pac. 881, the court held that an indemnitor of a surety on a depository bond, having paid the depositor after insolvency of the bank, may set off his claim against his indebtedness to the bank on promissory notes. This case also contains an exhaustive reference to cases that adhere to this theory of the law, and also many that are contrary.

The Supreme Court of Virginia in the case of *Barnes v. Barnes,* administrator, in discussing the right of a surety to a set-off to an insolvent estate, used the following language: "We are further of the opinion, even if this demand had been satisfactorily estab-

lished as due and owing by the appellant, the decree against him for the amount of that would still be erroneous in view of the agreed fact that the estate of M. C. Barnes deceased is insolvent and that appellant is responsible as surety for M. C. Barnes to the Peninsular Bank of Williamsburg for a sum largely in excess of appellee claim.'' In this case it will be observed that this surety had not at the time of the claim for a set-off paid the amount of the bond, but the court held that he was entitled to a set-off because of his being a surety and the principal being insolvent. In the case of *Johnson's Ex'rs v. Johnson Heirs*, 83 W. Va. 593, 98 S. E. 812, the Supreme Court of West Virginia in discussing a right of set-off held that a debtor of an insolvent estate may, in a court of equity, set off his liability as surety for the deceased, and is entitled to withhold payment of his debt until the amount of his liability is determined.

The appellant has cited numerous cases that hold that a set-off under such circumstances cannot be allowed. Some of these cases are based solely upon a statutory provision, others under the right of subrogation and others, that a surety does not become a creditor of the insolvent corporation until it had paid the obligation and as that happened after the appointment of the receiver the right of set-off does not exist.

Our Supreme Court in the early case of *Choteau v. Jones*, 11 Ill. 300, held, ''The relation of debtor and creditor between principal and surety, so as to entitle the surety to avoid a voluntary conveyance, made by his principal, commences at the date of the obligation by which the surety becomes bound, and not from the time he makes payment.'' Our Supreme Court in the case of *Hatfield v. Merod*, 82 Ill. 113, in deciding when a surety on note becomes a creditor against his principal, use this language: ''At the time of the making of the deed, Merod was bound as the security of Hatfield upon a promissory note to Dunn. Afterwards,

Merod was compelled to pay Dunn, and brought suit against Hatfield for the money so paid, and recovered judgment against Hatfield. This proceeding is for the satisfaction of that judgment. Merod was then a creditor, in the sense of the statute, at the time of the making of the deed, and has a right, as such, to call in question the deed.''

In the case of *Estate of Ramsay v. Whitbeck,* 183 Ill. 550, at page 567, the court in discussing a similar matter says, ''When a surety signs a bond the law raises an implied promise by the principal to reimburse the surety for any loss which he may sustain, and when a loss occurs this implied contract of indemnity relates back and takes effect from the time when the surety became responsible. Under this rule, when the sureties signed the bond of Ramsay the law implied a promise on his part to indemnify and save them harmless from all loss which they might sustain by reason of such signing, and when they made up the deficit this implied promise related back to the date of bond.''

In the later case of *Evans v. Illinois Surety Co.,* 298 Ill. 101, the court in discussing when one becomes a creditor of another on account of signing as a surety on a bond, says: ''The liability under the bond was created prior to the appointment of the receiver, on the execution and delivery of the bond. The cause of action accrued on that liability when there was a breach of the bond. The binding force of the contract between the company and claimant could no more be changed by the death of the company or the appointment of a receiver than could that of an individual surety. The State of Ohio was a creditor at the time of the appointment of the receiver as the word 'creditor' is usually understood in law. The relation of debtor and creditor between principal and surety commences at the date of the obligation by which the surety company becomes bound and not from the time it makes a payment.''

It seems to be the universal rule that where an insolvent bank holds a note of a depositor who had on deposit money in the bank at the time it became insolvent the right of set-off then exists. The allowance as a set-off of a claim acquired prior to the insolvency proceeding is based upon the idea that where the right of set-off exists at such time the debtor equitably owes only the balance over and above the amount which the insolvent owes him, and this is the debt that passes to the trustee in insolvency for the creditors, or the receiver; and hence, that the allowance of the set-off does not amount to a preference.

It is our opinion that the court properly found that the appellee had a just claim for a set-off against the claim of the receiver of the insolvent bank. The judgment of the circuit court of Mercer county is hereby affirmed.

*Judgment affirmed.*

Dove, J., dissents.